UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert McNATT, Defendant–Appellant.

No. 90–5315.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 8, 1991.

Decided April 25, 1991.

David F. Tamer, Winston–Salem, N.C., argued (Walter T. Johnson, Jr., Barbee, Johnson, Glenn & Associate, Greensboro, N.C., on brief), for defendant-appellant.

Christine Witcover Dean, Asst. U.S. Atty., argued (Margaret Person Currin, U.S. Atty., Raleigh, N.C., on brief), for plaintiff-appellee.

Before HALL and CHAPMAN, Circuit Judges, and COPENHAVER, United States District Judge for the Southern District of West Virginia, sitting by designation.

CHAPMAN, Circuit Judge:

Robert McNatt was convicted of possession with intent to distribute a kilogram of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). He appeals and claims error by the district court in (1) failing to suppress the kilogram of cocaine seized from his truck on the day of his arrest; (2) denying his motion to dismiss the indictment upon his claim of ineffective assistance of counsel; (3) restricting the testimony of state prosecutor Elaine Pappas so as to prevent her from stating her reason for changing her opinion of the reputation of Fayetteville narcotics agent Edwin Clarke for truthfulness; (4) refusing to admit into evidence a letter "probably written by Edwin Clarke," which letter admitted that Clarke had fabricated evidence in another narcotics case; (5) refusing to admit testimony going to the reason for Edwin Clarke leaving his employment with the Fayetteville Police Department; (6) denying appellant's motion in limine to prevent the government from arguing to the jury that appellant refused to consent to search his truck at the time of his arrest; and (7) using an erroneous base offense level in determining his sentence by including a quantity of drugs for which he was not indicted.

We find no merit to these exceptions, and we affirm the conviction.

## I

In August 1988, North Carolina officers executed a search warrant at a farm owned by Robert McNatt. There was a fairly sizable hog raising operation at the farm, and during the search the officers found 80 grams of marijuana and several loaded firearms. The marijuana was found in a barrel close to a shed removed from the house and in the vicinity of other barns and outbuildings. A warrant for the arrest of

McNatt was not issued at that time, but was issued on September 9, 1988 charging him with possession of marijuana and possession of a weapon as a convicted felon.

On September 9, 1988, government informant Davis called Special Agent Jackson of the DEA in Wilmington, North Carolina. He informed Jackson that McNatt was going to purchase a kilogram of cocaine from James McGrady, Sr. in Fayetteville, North Carolina on that day and that the cocaine was to be delivered by Federal Express. Agent Jackson requested informant Davis to call North Carolina SBI Agent Lea in Fayetteville and give him this information. Upon receiving this information from informant Davis, Lea sent agents Edwin Clarke and David Jenkins to McGrady Enterprises, a business owned by James McGrady. He advised the agents to watch for the Federal Express truck and for a blue Chevrolet pickup truck that was owned by McNatt. Agent Lea told Agent Brabble to get the arrest warrant for McNatt signed immediately.

The agents saw a Federal Express truck near McGrady Enterprises. They stopped the truck and were advised that a delivery had been made to McGrady Enterprises. As they approached McGrady Enterprises, they saw the blue pickup truck leaving the parking lot, and they followed it. After several blocks they stopped this pickup and found appellant McNatt was the driver. Agent Clarke asked McNatt to get out of the truck and at this point Agent Ridgen arrived. The agents asked McNatt for permission to search the vehicle, but he denied the request when he found that they did not have a search warrant. Ridgen called police headquarters to confirm that there was an outstanding arrest warrant for McNatt on the marijuana charges arising out of the search of his farm. McNatt was searched at the scene and $9,000 was found on his person. The truck was not searched at that time but was towed to the impoundment lot where it was searched, and a kilogram of cocaine was found on the front seat under a sweater. The defendant was arrested on state charges of possession with intent to distribute cocaine. This charge was dismissed by the state. In

August 1989, McNatt was arrested by DEA Agent Jackson on the federal charges arising out of the same facts and upon which he stood trial and was convicted.

At trial the government called James McGrady, Sr. and James McGrady, Jr. to prove the sale of the kilogram of cocaine to McNatt on September 9, 1988 for $18,000. The government also called agents Jackson and Lea and police officers Clarke and Ridgen to testify as to the information received from the informant and to the circumstances of the stop and arrest of McNatt, the impoundment of his truck, and the finding of the cocaine under a sweater under the front seat of the truck.

Agent James Sparks, Assistant Supervisor of the Drug Chemistry Section of the SBI, testified that he had examined the white powder removed from the appellant's pickup truck and that he found it to be cocaine in an undiluted form and that it weighed 1,001 grams.

Jackson also testified that after McNatt had been arrested and while he was being transported from Fayetteville to Raleigh, McNatt told him that shortly after he left McGrady Enterprises, he was stopped by Officer Clarke and that Clarke put the kilo of cocaine in his truck. He also told Jackson that marijuana found on his farm had been placed there by the police.

The defense, from the opening statement and throughout the trial, attacked Clarke, who had left the police department prior to the trial. Appellant contended that Clarke left the police department because he had manufactured evidence in prior narcotics cases and that the state had dropped certain prosecutions, including the state charges against him, because it did not wish to rely upon Clarke's testimony.

## II

■ Appellant made an oral motion at trial to suppress the kilogram of cocaine taken from his truck. He claimed that the inventory search of his pickup was not the result of a valid arrest and was therefore illegal, because he was stopped and arrested before an arrest warrant was issued.

He also claims that the information received from the confidential informant was not reliable and would not justify a stop of his vehicle.

The trial judge conducted a voir dire hearing during the trial, and concluded that even if the warrant for McNatt's arrest had not been issued prior to the stop, there was probable cause to stop him because of the information supplied by the informant. This information proved correct and set forth the time of the sale, the place of the sale, the delivery by Federal Express and the color of appellant's pickup. While the appellant argues that the government did not prove the reliability of the informant, the record is otherwise. The trial judge asked Agent Jackson during the voir dire: "Have you found this information provided to you on previous occasions to be reliable?" The witness answered in the affirmative. On the present facts, we agree that the officers acted on probable cause. The officer confirmed from the Federal Express driver that he had made a delivery to McGrady Enterprises, he saw a truck at McGrady Enterprises matching the description given him by the informant and he had the informant's statement that the cocaine would be sold at the time. This was probable cause under *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The same probable cause would support the arrest of appellant, and the inventory search of the vehicle subsequent to appellant's arrest is valid under *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987).

### III

■ Appellant claims error in the denial of his motion to dismiss the federal charges upon the ground that his sixth amendment right to effective assistance of counsel had been denied because the attorney, who had represented him in connection with the state charges arising out of his arrest on September 9, 1988, had also been representing James W. McGrady, Sr. and James W. McGrady, Jr. on cocaine trafficking charges pending against them in the United States District Court for the Eastern District of North Carolina. He claims this was a conflict of interest and that he was prejudiced because his then attorney did not make an effort to resolve the state charges against him.

Appellant does not allege a conflict of interest involving his trial counsel on the federal charges. His trial counsel in the present case had not represented the McGradys. The appellant does not claim actual prejudice during the trial of his federal case, but asks us to presume prejudice because his prior counsel was not sufficiently aggressive in obtaining dismissal of his state charges. He also claims that because his prior attorney actively engaged in negotiating a plea agreement on behalf of the McGradys, "such activity necessarily compromised the right of defendant McNatt to the undivided loyalty of his counsel."

The trial judge conducted a hearing on the motion and took the testimony of the prior attorney. The judge could find no conflict nor could he find any prejudice to appellant. Neither can we. The state charges against McNatt were dismissed, and he was represented by a different attorney at his trial on the federal charges.

### IV

■ Appellant contends that at trial he should have been allowed to ask his witness, North Carolina prosecutor Elaine Pappas, on redirect examination, the basis for her opinion that government witness Edwin Clarke was not truthful. On direct examination, appellant's attorney asked Pappas if as a result of knowing Detective Clarke for two years and working with him on certain cases, she had formed an opinion as to his character for truthfulness. The witness answered that she had an opinion and that Clarke was not truthful. On cross examination, Pappas was asked whether her current opinion regarding Clarke had changed from the time she worked with him in a state district court. She stated at the time that she worked with him in the district court her opinion was that Clarke was truthful.

On redirect examination, the witness was asked to tell the jury what had changed her mind about Clarke's credibility. The trial judge sustained an objection to this line of testimony, and we find no abuse of discretion in this ruling. Federal Rule of Evidence 608(b)[1] on cross-examination of a witness allows inquiry into specific instances of conduct of the person about whose character the witness is testifying, but the rule does not allow the party calling the witness to inquire into specific instances of conduct nor introduce extrinsic evidence of such. In addition, any use of specific instances of conduct and extrinsic evidence is committed to the discretion of the trial court by the clear language of the rule, and we find no abuse by the trial judge in the enforcement of the rule. Although the testimony of Clarke was important and the appellant had the right to attack his credibility, there are limits on how he may do this by use of opinion and reputation evidence, and specific instances of conduct. Clarke was not the only witness to testify about the stop and arrest of McNatt and the finding of the cocaine during the search of his pickup. Officers Lea and Ridgen testified and were subject to cross-examination, and the McGradys, Sr. and Jr., testified to the drug transaction.

## V

Appellant also claims error by the trial judge in refusing to allow the introduction, through the witness Elaine Pappas, of "a letter probably written by Edwin Clarke in which he admitted that he had fabricated evidence in another narcotics case." Witness Pappas testified that she had received this document from the office of appellant's attorney, that it states it was written by Edwin Clarke on March 3, 1989, and that Clarke had fabricated evidence in narcotics cases involving Erwin Sherlock, Vicki

Gaddy, and several others. Upon further questioning, Pappas stated that it was really not a letter but was a statement of Edwin Clarke. The statement was not witnessed, and a Xerox copy of the statement was offered in evidence with no explanation of the whereabouts of the original.

■ The court refused to allow the introduction of this statement even though Pappas advised the court that she had the North Carolina SBI analyze the written statement and that the SBI had given an opinion that the document was written by Edwin Clarke.

We find no error in the court's denial of admission of this document. The appellant attempted to prove the document by the witness Pappas. This witness had not authored the statement, it was not addressed to her, and she had been furnished the statement by the appellant's attorney. Ms. Pappas could not authenticate the statement, and her testimony as to the author of the document was hearsay. The document did not mention McNatt or the facts of his case.

Appellant made no effort to prove the document during the cross-examination of Edwin Clarke. Clarke was asked if he had fabricated evidence in narcotics cases and if he had given a statement to some drug defendant admitting the fabrication of evidence. He denies such actions, and he was never shown a copy of the statement while he was on the stand.

It is obvious that the trial judge viewed the effort of the appellant to introduce the statement through witness Pappas as another effort to prove, by extrinsic evidence, instances of misconduct by Clarke to attack his credibility. Pappas was appellant's witness. The statement was inadmissible because it was hearsay and also inadmissible because it did not comply with Federal Rule of Evidence 608(b).

---

1. **Rule 608. Evidence of Character and Conduct of Witness**

(b) **Specific instances of conduct.**—Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

■ Appellant argues that the document was admissible to show the bias of Clarke toward appellant. This argument is also unavailing. The document makes no mention of McNatt and it contains nothing to show that there was a relationship between Clarke and McNatt. "Bias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *United States v. Abel*, 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984).

McNatt also claims that he was prevented by the trial judge from showing through the witness Pappas that Clarke had "[a] relationship with an informer who was allegedly being used in his drug investigations." Appellant claimed that this line of testimony was to prove why Clarke left his position with the Fayetteville Police Department. The alleged informant with whom Clarke may have had a relationship was not involved in the McNatt case, and there was no showing that this line of questioning would have shown a bias of Clarke against McNatt. Again it was an effort to attack Clarke's credibility by extrinsic evidence in violation of Federal Rule of Evidence 608(b), and the court properly excluded it.

The government witness Clarke was vigorously cross-examined, and his credibility was attacked throughout the presentation of defendant's case. The trial judge exercised proper control of the case so as to prevent the Clarke issue from becoming "[a] trial within a trial."

## VI

■ Prior to jury arguments, defendant made a motion in limine seeking to prevent the prosecution from arguing to the jury that he had refused to allow the officers to search his pickup at the time he was stopped and arrested on September 9, 1988. Appellant claims that he has a fourth amendment right to refuse permission to search without a warrant, and the exercise of this right should not be used against him.

The trial judge denied this motion and observed:

Well, then don't you think it's a little one-sided for you to be able to argue that the drugs were planted there, when they would have had to have been planted by the officer, whose credibility you're attacking, and yet, not allow the government to argue that the defendant told that very officer and another officer that they could not search the vehicle.

The judge found that the prosecution could argue the refusal to allow the search because defendant had claimed from the beginning that the drugs were planted in his truck by Clarke, and he intended to pursue this claim in his argument to the jury.

Appellant claims that it is a violation of his due process rights for the government to argue that the assertion of a constitutional guarantee supports an inference of guilt. He relies upon *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), but these decisions do not support appellant's theory. *Doyle* and *Griffin* protect a criminal defendant from having his silence used against him and the use of silence as evidence of guilt. These cases involve fifth amendment rights which guarantee that one may not be forced to be a witness against himself in a criminal case, whether verbally or by his silence. The present case involves the fourth amendment right to be free from unreasonable searches, and the refusal to consent to a search could be upon privacy grounds, rather than fear of incrimination.

The comments of the agents that McNatt had refused permission to search his pickup was a fair response to McNatt's argument that Clarke had planted the kilo of cocaine in his truck. Appellant was on notice that this could happen, because the trial judge in denying his motion in limine stated that it would be one-sided or unfair to allow McNatt to argue that the drugs had been planted in the truck after he had been arrested but prevent the prosecutor from commenting on the fact that he had re-

fused permission to search the truck at the time of his arrest.

This is not analogous to the facts in *Doyle*, where the defendant had been given the warnings required by *Miranda*, which included the assurance that his silence could not be used against him and then impeaching his testimony at trial by means of his post-arrest silence. Under the fifth amendment, a suspect has the right to remain silent at all times and may not be required to say anything at the time of his arrest, during confinement or at trial. However, under the fourth amendment, a person may not prevent a search of his person or his property. By withholding permission to search, he merely puts the government to the procedural test of proving probable cause to obtain a search warrant.

The prosecutor did not mention appellant's failure to give permission to search in her opening argument to the jury. The brief comments on this subject came in the government's reply argument and were in response to appellant's attack upon Clarke and the assertion that Clarke planted the cocaine in appellant's truck. The government did not argue that appellant's refusal supported an inference of guilt, but only that it was inconsistent with the claim that the evidence had been planted.

A charge that one has been "framed" by a policeman's planting of a kilogram of cocaine in his truck and then arresting him and charging him with possession of cocaine with intent to distribute is not to be lightly made. Nor is it to be taken lightly by the officer charged. The officer and the United States Attorney have the right and the responsibility to respond to such a charge when there is little to support it. On the present record, there was very little to support appellant's claim that Officer Clarke had planted the cocaine in his truck. The evidence reflects that the kilogram of cocaine was as large as a brick and would not be easily concealed on Clarke's person. Officer Ridgen arrived immediately after Clarke had stopped McNatt. The stop and arrest were based upon accurate information received from a reliable informant.

The McGradys testified that the kilogram was delivered to McNatt moments before he was stopped.

It appears clear from the record that appellant's trial strategy was to put Officer Clarke on trial. Such a strategy is often used and sometimes successful. However, appellant sought the added advantage of preventing any comment on the weakness of his argument—his refusal to consent to a search of his truck at the time of the stop. The Assistant United States Attorney made no comment until her rebuttal argument, and only after defense counsel had claimed that Clarke had planted the evidence did she respond in three short sentences, which we find were a fair response to a very serious charge of police misconduct.

Certainly, a search at the time of the stop would have revealed whether the cocaine was in the truck. If the search had produced nothing, McNatt would not have been detained nor indicted. If the cocaine had been found, then appellant would have difficulty in arguing that Clarke framed him. Appellant seeks to make a serious charge of police misconduct, and at the same time prevent the police from pointing out the weakness of the charge.

Appellant relies on *United States v. Taxe*, 540 F.2d 961 (9th Cir.1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977), in which the court held that it was error for the prosecutor to comment to the jury that Taxe had refused police permission to search his truck at the time he was stopped. However, this opinion does not indicate whether these remarks were made by the prosecutor in his opening argument to the jury, or whether they were made as a fair response to some claim presented by the defendant in his jury argument. In *United States v. Thame*, 846 F.2d 200 (3d Cir.), *cert. denied*, 488 U.S. 928, 109 S.Ct. 314, 102 L.Ed.2d 333 (1988), also involving comments by a prosecutor on a denial of a permission to search, the court stated that the argument could not be justified as invited reply since the prosecutor raised the argument first, and it cited *United States v. Robinson*, 485 U.S.

25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988). In *Robinson*, the defense attorney, in his closing argument, stated several times that the government had not allowed the defendant, who did not testify, to explain his side of the story and had unfairly denied him the opportunity to explain his actions. The prosecutor sought permission to comment upon the defendant's failure to testify, because the defense had opened the door in its jury argument. The Court held that this was not a case in which the prosecutor on his initiative had asked the jury to draw an adverse inference from the defendant's silence or to treat the defendant's silence as substantive evidence of guilt, but was simply a fair response to a claim made by the defendant or his counsel. The Court stated that there may be some cost to a defendant in remaining silent in every situation but the Court declined to preclude a fair response by the prosecutor in situations such as that presented.

This reasoning applies to our facts. Appellant was well aware that if he claimed the cocaine had been planted in his truck by Officer Clarke, the prosecutor would be allowed to comment on his refusal to allow a search at the time most important to this issue. The appellant proceeded with his argument and the prosecutor made a short response that was invited and such was not an unfair penalty for defendant's asserting a constitutional privilege.

■ Even if it was error, it was harmless error. In *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), the Court explained our duty when considering error in the record.

The question a reviewing court must ask is this: absent the prosecutor's allusion to failure of the defense to proffer evidence to rebut the testimony of the victims, is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty? A reviewing court must begin with the reality that the jurors sat in the same room day after day with the defendants and their lawyers; much testimony had been heard from the three women who described in detail the repeated wanton acts of the defendants

during three hours in two States, thus negating any doubt as to identification.

*Id.* at 510–11, 103 S.Ct. at 1981 (citation omitted).

In the present case, there was substantial evidence from the McGradys as to their drug dealings with McNatt, the information supplied by the informant was correct in all particulars, other law enforcement officers testified and their testimony reenforced that of Clarke, and the kilogram of cocaine was found in appellant's truck shortly after he left the McGradys. We can say that it is clear beyond a reasonable doubt on the present record that the jury would have returned a verdict of guilty without the short statement by the Assistant United States Attorney that appellant had denied permission to search the pickup at the time of the stop.

## VII

■ Appellant claims error by the district court in including amounts of cocaine for which he was not convicted in calculating his base offense level. The court found that the defendant was involved in two and a half kilograms of cocaine. The court stated that this finding was based upon the credibility of the witness James McGrady, Sr. at trial. This witness testified that McNatt had sold him one-half kilogram of cocaine between July and August 1988 and that between August 12 and September 9, 1988, McGrady had sold two kilograms to McNatt. This included the kilogram that was found in McNatt's truck and resulted in his prosecution. All of these transactions occurred within a three month period and involved the same people and the "same course of conduct" under § 1B1.3(a)(2). The sentencing court may consider quantities of cocaine not specified in the indictment, when they result from the same course of conduct or a common scheme or a plan, as the offense of conviction. *United States v. Williams*, 880 F.2d 804 (4th Cir.1989). The findings of fact by the district judge are supported by the record, and we find no error in the sentence.

For the foregoing reasons, the conviction of the appellant is

AFFIRMED.