21 F.3d 426
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Francina Margarita JEMMOTT, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francina Margarita JEMMOTT, Defendant-Appellant.
 Nos. 93-5322, 93-5352.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 10, 1994.
Decided April 22, 1994.
 
 Appeals from the United States District Court for the Eastern District of North Carolina, at Fayetteville. Malcolm J. Howard, District Judge (CR-92-33-3).
 Paul K. Saul, Jr., Smith, Helms, Mulliss & Moore, Raleigh, NC, for appellant.
 John Eric Evenson, II, Asst. U.S. Atty. (James R. Dedrick, U.S. Atty., on brief), Raleigh, NC, for appellee.
 E.D.N.C.
 AFFIRMED.
 Before WIDENER and MICHAEL, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant, Francina Margarita Jemmott, having had her motion to suppress evidence denied, pled guilty to possession with intent to distribute cocaine and cocaine base (crack) in violation of Title 21 U.S.C. Sec. 841(a)(1), was sentenced to 120 months and appeals, alleging error in the trial court's refusing to suppress controlled substances discovered in her shoulder bag by officers of the Fayetteville, North Carolina Police Department upon the appellant's arrival at the Fayetteville Airport.
 
 
 2
 A second count, charging interstate travel to promote an unlawful activity, in violation of Title 18 U.S.C. Sec. 1952(a) was, upon motion of the government, dismissed.
 
 
 3
 Finding no error, we affirm.
 
 
 4
 The facts as found by the magistrate judge and adopted by the district judge are fully supported by the record.
 
 
 5
 The record reveals that the appellant was approached by a plain clothes officer as she, after disembarking from a flight which arrived at the Fayetteville Airport at about 2:00 o'clock p.m. on March 6, 1991, walked directly to a phone booth. The plain clothes officer, Lt. Simons, had, on the day prior, been informed by Sergeant Merritt of the Fayetteville Police Department that he, Sergeant Merritt, had received information on March 5, 1991, from a confidential and reliable informant that "Francina Jemmott," a fair complexioned black female in her early 20's, about 5' tall, weighing approximately 140 pounds would be returning to Fayetteville on a flight from New York on the following day--March 6.
 
 
 6
 Merritt informed Lt. Simons that his informant advised that Jemmott would be wearing a blue coat and blue jeans, and carrying a red and black shoulder bag containing a large amount of cocaine. Once alighting from the plane, she would go directly to a phone booth and telephone one "Sammy D", a known drug dealer in the Fayetteville area. Lt. Simons, who was familiar with Samuel "Sammy D" Jones, and knew him to be a large drug dealer in the metropolitan area of Fayetteville, verified that Jemmott had taken a U.S. Air flight out of Fayetteville to New York on March 4, and was scheduled to return on a 10:00 a.m. flight on March 6.
 
 
 7
 On Wednesday morning, March 6, Simons went to meet Jemmott's plane and was informed by airport authorities that Jemmott had rescheduled her anticipated arrival for later that day. Upon his return to the airport, he approached Jemmott, who had alighted from an airplane. She was dressed as described by Merritt's informant, carrying a red and black shoulder bag. Simons, upon approaching Jemmott, inquired if she were Mrs. Jemmott, to which she replied "yes." After identifying himself and displaying his credentials, the Lt. asked her if she would accompany him to a more private area to talk. Upon agreeing, she freely walked with Lt. Simons to a small room used to change infants' clothing. Jemmott, upon entering the room, asked, "What is this about?" Simons responded by telling her that he was there to investigate a matter concerning information that she was holding a large amount of drugs to take to Sammy Jones, and asked if that was true. Jemmott responded by saying "yes." The Lt. then asked if he could have the cocaine, to which Jemmott, without verbal response, reached into her shoulder bag, pulled out the cocaine and handed it to Lt. Simons. The exchange between the two is estimated to have taken not more than five minutes. Jemmott was then taken into custody and transported by Lt. Simons and an investigator, Sherry Adler, to a Law Enforcement Center. While en route, Lt. Simons orally advised Jemmott of her Miranda rights, to which she indicated her understanding. En route to the Law Enforcement Center, Mrs. Jemmott interrupted the Lt.'s recitation of her Miranda rights to state that "This cocaine is not mine. I'm just bringing it in here for Sammy" and other similar remarks. Jemmott, upon arrival at the Center, willingly executed the Miranda rights form which had been read to her, and upon being asked if she wished to cooperate, she responded, "Yes, I'll do whatever I can to cooperate." Thereafter, a taped interview was made of the officers questioning of Mrs. Jemmott.
 
 
 8
 Following the interview, Mrs. Jemmott agreed to and did cooperate to the extent of permitting the officers to fit her with a conversation monitoring device and under police surveillance delivered the cocaine, which had been found on her, to Jones' mother at a house where she apparently resided. Jemmott and the officers had anticipated Jones to be there, but he was apparently outside and his mother left the house and returned with him. Jones presumably spotted the officers and fled from the scene. The cocaine was recovered. Jemmott was returned to the Enforcement Center, the officers secured a search warrant for the house occupied by Jones' mother and took another statement from Jemmott after once again reading her her rights under Miranda.
 
 
 9
 Much of the testimony of Lt. Simons was disputed by Jemmott, who testified that she denied to Lt. Simons at the airport that she had any drugs, that he asked her to go to the small room and that, anticipating being handcuffed and incarcerated, she complied. It is to be noted that while not referred to in the brief of appellant, she, in support of her suppression motion, filed an affidavit contending that police officers carried her into the room at the airport. She testified as well that Lt. Simons reached into her bag and removed the cocaine. Admittedly, after seizing the cocaine which he says appellant handed to him, Lt. Simons placed her under arrest.
 
 
 10
 A suppression hearing was held before a magistrate judge, who reported that he found the testimony of the police officers to be credible, and that appellant had voluntarily produced the cocaine and subsequent to being advised of her rights under Miranda made voluntary statements. Additionally, the magistrate judge found that Lt. Simons had probable cause to arrest her.
 
 
 11
 Appellant's motion to suppress both the cocaine and incriminating statements were properly denied by both the magistrate judge and the trial judge.
 
 
 12
 On January 19, 1993, appellant entered a plea of guilty, reserving the right to appeal the Court's denial of the suppression motion.
 
 
 13
 The issues here involved are of simple solution.
 
 
 14
 The suppression issue is controlled by the fact that the magistrate judge's credibility determinations were not clearly erroneous in light of his opportunity to observe the witnesses and judge the credibility of each. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 351 (1992); United States v. Pelton, 835 F.2d 1067 (4th Cir.1987), cert. denied, 486 U.S. 1010 (1988).
 
 
 15
 We review de novo legal conclusions involved in the district court's suppression determination, but review factual findings underlying the legal conclusions subject to the clearly erroneous standard. United States v. Rusher, supra at 873.
 
 
 16
 While Jemmott argues that the intervention of the law enforcement officers at the airport was a violation of her Fourth Amendment rights, the record amply supports the officers' actions.
 
 
 17
 The evidence at the suppression hearing was uncontradicted that the tip, upon which the officers acted, came from a confidential and reliable informant. While the evidence in this regard is limited to the officer's statement, it is unchallenged and uncontradicted that he received information from a confidential and reliable informant. Such a statement uncontradicted or indeed even challenged was sufficient to establish reliability on the informant's part. See United States v. McNatt, 931 F.2d 251, 254, (4th Cir.1991), cert. denied, ---U.S. ----, 112 S.Ct. 879 (1992).
 
 
 18
 Jemmott contends that she was arrested without probable cause when she went into the changing room and that such illegal arrest required suppression of the drugs. The government argues that Jemmott's contact with Lt. Simons was a consensual one or, alternatively, a justifiable Terry stop based on the reasonable, articulable suspicion that Jemmott was engaging in criminal activity.
 
 
 19
 This Court is guided by the Supreme Court's reasoning in Alabama v. White, 496 U.S. 325 (1990), where the Court concluded that the factors constituting the "totality of the circumstances" approach of Illinois v. Gates, 462 U.S. 213 (1983), "are also relevant in the reasonable suspicion context, although allowance must be made in applying them for the lesser showing required to meet that standard." White, 496 U.S. at 328-29.
 
 
 20
 Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.
 
 
 21
 Id. at 330. As with the Court's determination in Adams v. Williams, 407 U.S. 143 (1972), while the tip from the informant in the instant action might not have been reliable enough to establish probable cause, nevertheless it was sufficiently reliable to justify a Terry stop. 407 U.S. at 147. Here, the informant gave police a name, a physical description, a description of her clothing and her bag, a general itinerary, a predictive course of conduct upon arrival at the Fayetteville Airport, and an alleged link to a known Fayetteville drug dealer. Further, the officer verified the general travel destination and return to Fayetteville, recognized appellant upon arrival from her physical description and her luggage, observed her go to the public telephones as predicted, and confirmed her name. While appellant is correct that these facts alone are perfectly consistent with innocent activity, according to White, the fact that the informant was able to predict such specific future behavior is reasonable grounds from which the officer could assume that the informant was someone with access to reliable information about the person's illegal activities. Accordingly, it is the Court's determination that the police did have a reasonable, articulable suspicion to stop appellant. The Court further concludes that the investigatory detention in the instant case did not amount to a full seizure. See United States v. Manbeck, 744 F.2d 360, 377 (4th Cir.1984), cert. denied, 469 U.S. 1217 (1985).
 
 
 22
 Appellant also challenges the district court's denial of her motion to suppress her incriminating statements. Due to the Court's conclusion that appellant's detention was a limited Terry stop as opposed to a de facto arrest, under Berkemer v. McCarty, 468 U.S. 420, 440 (1984) appellant was not in custody for purposes of Miranda, and neither the statement made prior to the Miranda warning nor those made later are subject to suppression.
 
 
 23
 For the foregoing reasons, the judgment of the district court is
 
 
 24
 AFFIRMED.