**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 98-4244

INTHA NOI CHANTHAVONG,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
N. Carlton Tilley, Jr., District Judge.
(CR-97-211)

Argued: March 5, 1999

Decided: September 8, 1999

Before TRAXLER and KING, Circuit Judges, and
LEE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Bruce Alan Lee, Greensboro, North Carolina, for Appel-
lant. Robert Michael Hamilton, Assistant United States Attorney,
Greensboro, North Carolina, for Appellee. **ON BRIEF:** Walter C.
Holton, Jr., United States Attorney, Greensboro, North Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Intha Noi Chanthavong ("Chanthavong") appeals his November 1997 conviction and March 1998 sentence to a term of 87 months in the Middle District of North Carolina for possession with intent to distribute methamphetamine. He contends on appeal that the district court erred in denying his motion to suppress certain evidence. We vacate the district court's denial of the motion to suppress the evidence found in a locked safe in Chanthavong's closet and remand this case to the district court for two findings: (1) whether Chanthavong's consent to search his room extended to a locked safe in the closet of that room; and (2) whether the police officers would have obtained a search warrant for the safe had they not obtained the combination from Chanthavong.

I.

Officer Kevin Chandler ("Officer Chandler") of the Greensboro Police Department arrested an individual who later became a confidential informant. The informant gave Officer Chandler information about different people in Greensboro who were allegedly selling narcotics. Officer Chandler testified during the suppression hearing that he found the informant to be reliable based on statements he made about a female subject selling drugs in the northern area of Greensboro. Although Officer Chandler learned from the informant the name of the subject,[1] how she operated, and the times at which she would sell drugs, he did not surveil her activities to determine whether the informant was reliable. Officer Chandler did, however, conduct water and sewer checks, and make FBI, local, and state histories to confirm some of the information he received from the informant.

_____

[1] On cross-examination at the suppression hearing, defense counsel asked Officer Chandler the name of the female subject and he could not recall her name.

2

On or about July 20, 1997, the informant provided information to Officer Chandler that a subject known as "Noi"[2] was selling marijuana and cocaine in the High Point Road area of Greensboro, North Carolina. The informant also told the police that"Noi" drove a white Mazda MPV and a black Acura Legend. Additionally, a Crime Stoppers caller advised the police that there was a man living on Maywood Street who operated a white Mazda MPV and sold drugs in the High Point Road area. The police corroborated these tips through surveillance of Maywood Street. The police checked the tag of the Mazda and learned that it was registered to Phommy Chanthavong at 2009 Maywood Street, which is also Defendant/Appellant Chanthavong's address. During the surveillance, the police noted that people stopped at the house for short periods of time and then left in a manner consistent with narcotics trafficking.

On August 21, 1997, the informant notified police that "Noi" would be making a drug delivery in the area of Amber and Fairfax Road to a person in a gray Buick Park Avenue car at about 10 p.m. The person Chanthavong was scheduled to meet was the informant. Nearing 10 p.m., Chanthavong arrived at the above location and the police stopped his vehicle, a green Mitsubishi Galant. Officer Allen asked Chanthavong to exit the vehicle. After Chanthavong stepped out of the car, Officer Allen asked Chanthavong whether he had any narcotics on his person. According to Officer Allen, Chanthavong replied in the affirmative and said they were in his waistband. Officer Allen felt for the drugs and retrieved them from Chanthavong's waistband in the crotch area. Officer Allen placed Chanthavong under arrest and asked him if there were any other narcotics on his person or in the car. Chanthavong replied no. During a pat down search, Officer Allen found $957 on Chanthavong's person. He also looked inside the vehicle and found a black ledger with a small bag of marijuana and two small bags of powder cocaine. Officer Allen testified that he had consent to search the car because when Chanthavong said there were no drugs in the car, he told the officer he could "look inside the vehicle, if [he] wanted to." (J.A. at 78).

After Officer Allen had made the arrest of Chanthavong, Officer Chandler arrived on the scene. He asked Chanthavong where he lived
_____

[2] "Noi" was later determined to be Defendant/Appellant Chanthavong.

3

and Chanthavong gave the 2009 Maywood Street address. Officer Chandler asked if there were any drugs there and Chanthavong replied in the negative. Officer Chandler asked if he could search the home and Chanthavong said yes. At the suppression hearing, Chanthavong denied that he gave his consent for the search of the residence.

After the police took Chanthavong to the police station, they advised him of his Miranda rights and "booked" him. Chanthavong stated that he wanted a lawyer. While Chanthavong was being transported to the police station, several officers went to the Maywood Street residence to conduct a search. With the aid of an interpreter, the officers received permission from Chanthavong's parents to search Chanthavong's room. Sergeant Crotts and Officers Dodd and Swaringen conducted the search of Chanthavong's room. They found marijuana, several packages of cocaine, and a small (2-3' x 4') safe covered with a blanket which smelled of marijuana. Sergeant Crotts called Officer Chandler about the safe. Officer Chandler asked Chanthavong the combination to the safe and he gave it to the officer. Officer Chandler relayed the combination to Sergeant Crotts who opened the safe and found several large packages of marijuana, a package of powder cocaine, and a package of methamphetamines. He also found two weapons and some jewelry in the safe. Sergeant Crotts testified that if he had been unable to determine the combination to the safe, he would have opened it through use of force. (J.A. at 95).

On September 29, 1997, Chanthavong was indicted on a single-count indictment for possession with intent to distribute in excess of 50 grams of cocaine base. On October 27, 1997, Chanthavong was indicted on a superseding indictment charging him with possession with intent to distribute 394 grams of methamphetamine. On October 23, 1997, Chanthavong filed a motion to suppress and he filed an amended motion to suppress the next day. Judge Tilley of the Middle District of North Carolina at Durham conducted the suppression hearing on November 5, 1997. Judge Tilley denied the motion to suppress. On November 17, 1997, pursuant to a written plea agreement wherein Chanthavong reserved the right to appeal the adverse ruling on his suppression motion, he pled guilty to the charge in the superseding indictment--possession with the intent to distribute 394 grams of methamphetamine. On March 17, 1998, Chanthavong was sentenced

4

to a term of 87 months. Chanthavong filed a timely notice of appeal on March 24, 1998.

II.

Upon hearing Chanthavong's motion to suppress, the district court made several findings of fact and denied the motion. The district court found that the officers had probable cause to arrest Chanthavong under Draper v. United States, 358 U.S. 307 (1958), based on information from a reliable informant. The district court also held that the officers had probable cause to search the house because their surveillance had indicated activity there consistent with drug sales. Accepting the officers' testimony of what took place during the stop and arrest, the district court found that Chanthavong voluntarily gave informed consent to search his room. The district court noted that Chanthavong is bright, intelligent, articulate and that it was obvious he was no "newcomer to the law." (J.A. at 158). The district court further found that Chanthavong's mother, through the interpreter, gave consent for the officers to search the room.

With regard to Chanthavong's statement at the police station about the combination of the safe, the district court decided to suppress the statement because Chanthavong had been advised of his Miranda rights and had requested an attorney. The district court refused to suppress the evidence from the safe, however, on the grounds that it would have been discovered inevitably due to the strong odor of marijuana emanating from the safe. The district court found that the officers had probable cause to procure a warrant to search the safe and that perhaps they had consent to open it by any means necessary. The district court declined to make that finding, though, because it was already admissible based on the inevitable discovery doctrine.

The primary issue on appeal is whether the motion to suppress was denied in error, premised on the argument that the search of Chanthavong's person, vehicle, residence, and safe were improper.

III.

Chanthavong's argument on appeal centers on the contention that the police did not have probable cause to arrest him and that there was

no reasonable suspicion to stop him because Officer Chandler did not determine whether the informant was reliable before arresting Chanthavong. Thus, Chanthavong asserts that the fruits of the search of his person, vehicle, and residence should have been suppressed. With respect to the evidence found in the safe, Chanthavong claims that it should have been suppressed because he had invoked his right to counsel and all interrogation, including the question about the combination to the safe, should have ceased. Chanthavong also argues that the inevitable discovery doctrine should not have been applied in this case.

The standard of review for legal conclusions is de novo and factual findings are upheld unless clearly erroneous. United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992).

A.

An anonymous tip, corroborated by independent police investigation may result in probable cause for a warrantless arrest. Illinois v. Gates, 462 U.S. 213, 243-44 (1983); United States v. Porter, 738 F.2d 622, 625 (4th Cir. 1984); see also United States v. Miller, 925 F.2d 695, 699 (4th Cir. 1991); United States v. Perrin, 45 F.3d 869, 871-73 (4th Cir. 1995). The corroboration of the tip may occur in the surveillance of the subject just prior to arrest rather than through several instances of observing the subject. See, e.g. , United States v. Sinclair, 983 F.2d 598 (4th Cir. 1993); United States v. McNatt, 931 F.2d 251 (4th Cir. 1991). In both Sinclair and McNatt, this Court held that when the police observed a suspect matching the description and performing the acts that an informant advised them of prior to the event, there was probable cause to arrest. In McNatt , the trial judge questioned the agent about the reliability of information the informant had provided previously. 931 F.2d at 254. The agent corroborated many details of the informant's information and thus found that the information was reliable. Id. The district court held that the officers acted on probable cause. Id.

The same result is warranted here. Viewing the totality of the circumstances confronting the officers, the informant's tips, which were substantially corroborated, established probable cause to arrest the defendant without a warrant. During the suppression hearing, Officer

6

Chandler testified that he found the informant's information trustworthy because previously the informant had given him verifiable information about a female subject who sold drugs and about the drug operation on Maywood Street. Both tips proved to be reliable. The informant's prior information proved to be reliable and was a sufficient basis for Officer Chandler to rely on the informant's tips. See Draper v. United States, 358 U.S. 307, 313 (1958) (finding that the officer had verified every facet of the informant's tips except one and had reasonable grounds to believe the unverified information would likewise be true); Sinclair, 983 F.2d at 602 (upholding probable cause where suspects matched in at least four particulars the description the officer received from the informant); McNatt, 931 F.2d at 254 (upholding probable cause where officer confirmed two tips and had a statement from an informant about a cocaine sale). Officer Allen had probable cause to stop Chanthavong based on the tips from the informant, the Crime Stoppers' tip, the ensuing surveillance of Chanthavong's street, and his observation of Chanthavong arriving at the location of the planned drug transaction with the informant.

The district court found that Chanthavong consented to the search of his person, his car, and his residence. Whether Chanthavong voluntarily consented to the searches is a factual question which the Court reviews for clear error. United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996). The denial of the motion to suppress is not reversible unless the factual findings are clearly erroneous. Chanthavong has not demonstrated that the findings are error.

A police officer may conduct a search of an area without a warrant and without probable cause if the person in control of the area voluntarily consents to a search. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). To determine whether consent is voluntary, the Court must consider the totality of the circumstances. Id. at 227; Lattimore, 87 F.3d at 650. Appropriate factors to consider include the age, maturity, education, intelligence, and experience of the accused as well as the conditions under which the consent was given, such as the officer's conduct, the number of officers present, and the duration, location, and time of the encounter. See Lattimore , 87 F.3d at 650.

The record supports the district court's finding that Chanthavong voluntarily consented to the search of his car and residence. As the

7

district court found, Chanthavong is "bright, intelligent, articulate, . . . and no newcomer to the law." (J.A. at 158). At the time of the arrest, Chanthavong was nineteen years old and had taken classes at the Guilford Technical Community College. Nothing in the record indicates that Chanthavong's consent was involuntary or that the environment was coercive or intimidating. In fact, Chanthavong volunteered that he had drugs on his person and told the officer he could "look inside the vehicle, if [he] wanted to." (J.A. at 78).

The Court therefore concludes that the district court did not err in finding that Chanthavong voluntarily consented to the search of his car and his room. The Court holds that any evidence found therein, except for the contents of the locked safe, are therefore admissible. As a result, the Court affirms the district court's denial of the motion to suppress as to that evidence.

B.

The district court found that the search of the safe was unlawful due to the fact that the officers obtained the combination for the safe by questioning Chanthavong without counsel present after Chanthavong had invoked his right to have an attorney present. Despite the inadmissible statement, the district court held that the contents of the safe inevitably would have been discovered based on finding that there was a strong odor of marijuana emanating from the safe and that the officers had probable cause to procure a warrant to search the safe, and perhaps consent to search the safe.

Without more, the district court's finding that the officers had probable cause to procure a warrant to search the safe is not a sufficient basis on which to invoke the inevitable discovery doctrine. Because the district court failed to make a finding on the scope of Chanthavong's consent to search his room, in particular whether the consent included the locked safe, and on whether the police officers would have procured a search warrant for the safe had they not illegally obtained the combination from Chanthavong, we vacate the denial of the motion to suppress as to the evidence found in the locked safe and remand for the aforementioned findings.

Under the inevitable discovery doctrine, information obtained by unlawful means is nonetheless admissible if the government can

8

establish by a preponderance of evidence that the information ultimately or inevitably would have been discovered by lawful means. <u>Nix v. Williams</u>, 467 U.S. 431 (1984). The inevitable discovery doctrine is an exception to the exclusionary rule. The rationale behind the exception is that where evidence inevitably would have been discovered by lawful means, the exclusionary rule should not be applied because the goal of deterrence is so attenuated. <u>Id</u>. at 444. The fact that makes the discovery inevitable must "arise from circumstances other than those disclosed by the illegal search itself." <u>United States v. Thomas</u>, 955 F.2d 207, 211 (4th Cir. 1992) (deciding not to apply the inevitable discovery doctrine where only the illegal search itself led to the discovery of the stolen bank money).

Chanthavong argues that the district court erred in admitting the contents of the safe under the inevitable discovery doctrine because the doctrine may be invoked only in circumstances wherein the officers would have discovered the evidence by other lawful means. Chanthavong argues that under <u>United States v. Allen</u>, 159 F.3d 832 (4th Cir. 1998),**3** the mere fact that the officers have probable cause to get a search warrant, without more, does not support use of the inevitable discovery exception. Chanthavong claims that Sergeant Crotts' testimony that he would have broken the safe open had he not learned the combination shows unlawful rather than lawful means. Chanthavong contends that the officer would not have sought a search warrant because he did not indicate as such during his testimony.

In <u>Allen</u>, a panel of this Court reviewed the inevitable discovery doctrine and discussed its application. The facts of the case involved a defendant who was arrested for possession of marijuana and crack cocaine. 159 F.3d at 834. During a stop in Greensboro, North Carolina, a police officer asked the defendant, who had been traveling by bus, if he would permit the officer to search his knapsack. <u>Id</u>. According to the officer, the defendant consented to the search. <u>Id</u>. When asked, he told the officer that he did not have any other bags on the bus. <u>Id</u>. In the knapsack, the officer found a clear plastic bag with a substance later identified as marijuana. <u>Id</u>. The defendant tried to

_____

**3 <u>Allen</u>** was decided after the district judge in the instant case made his ruling on the motion to suppress.

9

leave the bus, but he was arrested, handcuffed, and given his Miranda warnings. Id. at 835.

The officers questioned other passengers and identified the owners of all the bags on the bus except for one--a large black duffel bag. Id. The officer treated the bag as abandoned, searched it, and found a package of crack cocaine and a train ticket belonging to Anthony Washington. Id. The defendant had given that name to another officer there, but later denied ownership of the duffel bag or the knapsack. Id.

The defendant moved to suppress evidence obtained from the search of the duffel bag and statements made to the police about that evidence after the arrest. Id. at 834. The district court denied the motion to suppress, concluding that the cocaine in the duffel bag inevitably would have been lawfully discovered. Id . at 838. The district court based this conclusion on the officers' testimony that they would not have left an unattended, unidentified bag on the bus and that the drug detection dog was available at the bus terminal for purposes of assistance if necessary. Id. The district court held that there was ample evidence that the officers would have discovered the crack cocaine through the use of the drug detection dog despite the findings that the officers did not have consent to search the baggage and that there was no abandonment of the baggage before the search. Id.

On de novo review, this Court held that the district court erred in denying the motion to suppress. Id. at 843. The Court concluded that the cocaine inside a duffel bag found on a bus would not have been discovered inevitably without an illegal search where the officer could have used a drug detection dog to establish probable cause, but did not. Id. at 840. The Court held that the district court's inevitable discovery holding was flatly inconsistent with the court's abandonment findings. Id. at 840. The district court found no evidence that the defendant was asked if he had any other baggage on the bus besides the backpack that officers searched with the defendant's consent and in which they found contraband. Id. Yet, the district court credited the officer's testimony that if the defendant had not made the statement to her that he had no other bags, she would have run a drug detection dog over the unclaimed duffel bag. Id. The Court found that it was impossible to conclude that the officer inevitably would have used a

drug detection dog if the defendant had not disclaimed ownership of any other bags when it was uncontroverted that, in fact, she did not call for a drug detection dog and the district court found no evidence that the defendant disclaimed ownership of other bags. Id.

In discussing the inevitable discovery doctrine, the Court ruled that the "existence of probable cause for a warrant, in and of itself and without any evidence that the police would have acted to obtain a warrant, does not trigger the inevitable discovery doctrine any more than probable cause, in and of itself, renders a warrantless search valid." Id. at 841. The Court explained that the inevitable discovery doctrine may apply where additional routine or factually established investigative steps would inevitably lead to discovery of the evidence without undertaking any search. Id.**4** The Court also noted that the inevitable discovery doctrine may apply where "the facts indicate another search inevitably would have occurred and would inevitably have uncovered the evidence, and that search falls within an exception to the warrant requirement." Id."[W]hen evidence could not have been discovered without a subsequent search, and no exception to the warrant requirement applies, and no warrant has been obtained, and nothing demonstrates that the police would have obtained a warrant absent the illegal search, the inevitable discovery doctrine has no place." Id. at 841.

After correctly finding that Chanthavong's statement providing the combination was inadmissible because it was obtained through questioning without counsel present after Chanthavong had invoked his right to counsel, the district court refused to suppress the contents of the safe and held them admissible under the inevitable discovery doctrine. The district court found that the contents of the safe would inevitably have been discovered based on findings that: (1) there was a

_____

**4** The Court pointed to United States v. Melgar, 139 F.3d 1005 (4th Cir. 1998), as a decision which exemplified this situation. In Melgar, the Court held the admission of the defendant's statements harmless error. Id. at 1016 n.3. The Court acknowledged that the defendant revealed his illegal alien status during illegal interrogation without counsel present, but held that the government inevitably would have discovered the defendant's status by running a routine computer check on a false identification card that had been lawfully obtained before interrogation. Id.

11

strong odor of marijuana emanating from the safe; and (2) the officers had probable cause to procure a warrant to search the safe. The district court declined to make a finding about whether the officers had consent to open the safe by any means necessary.

The district court did not make sufficient findings to apply the inevitable discovery doctrine to this case. To employ the inevitable discovery exception, the government must establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means. Nix , 467 U.S. at 461. Here, the government did not show that the contents of the safe would have been discovered by lawful means. The contents of the safe could not have been discovered without a subsequent search. Thus, to apply the inevitable discovery doctrine, the district court had to find that the subsequent search of the safe was lawful. Allen discussed several ways to demonstrate that the search was lawful, including: (1) finding an exception to the warrant requirement such as an inventory search or search incident to arrest; (2) finding that additional routine or factually established investigative steps would inevitably lead to discovery of the evidence without a search; or (3) finding that the discovery of the evidence was inevitable due to a subsequent search that required a warrant and that the police had probable cause to obtain a warrant but failed to do so, if there is evidence that the police would have obtained the necessary warrant absent the illegal search. Allen, 159 F.3d at 841.

The district court did not premise its application of the inevitable discovery doctrine on the consent exception to the warrant requirement. Although the district court found that Chanthavong voluntarily consented to a search of his car and room, the district court did not find specifically that Chanthavong's consent to search his room extended to the locked safe therein.[5] The district court specifically stated that it did not have to make a finding about whether the police officers had consent to open the safe by any means whatever. (J.A. at 160). To the contrary, the district court needs to make a specific

_____

[5] **But see United States v. Wager** , 165 F.3d 913, No. 97-4499, 1998 WL 789182 (4th Cir. Nov. 13, 1998) (unpublished disposition) (affirming the finding that Wager voluntarily consented to search of the room and the wall safe).

12

finding about the scope of Chanthavong's consent in order to determine if the consent to search exception to the warrant requirement applies and correspondingly, to determine whether the inevitable discovery doctrine applies to validate the unlawful search of the safe.**6** See Allen, 159 F.3d at 841 ("The doctrine also may apply where the facts indicate another search inevitably would have occurred and would inevitably have uncovered the evidence, and that search falls within an exception to the warrant requirement.").

The district court made no finding that additional routine or factually established investigative steps would inevitably lead to discovery of the evidence without a search.

Third and finally, the government produced no evidence that the police would have obtained the necessary warrant absent the illegal search of the safe. Officer Crotts testified that if Chanthavong had not given him the combination to the safe, the officers would have opened it by force. Officer Crotts did not state whether he would have attempted to obtain a search warrant for the safe. The officers did not obtain a warrant to search the safe and used the combination illegally obtained from Chanthavong. Thus, there is no evidence demonstrating that the police would have obtained a warrant absent the illegal search. The district court premised its application of the inevitable discovery doctrine on the finding that the police officers had probable cause to search the safe. The inevitable discovery doctrine does not apply where the police officers had probable cause to conduct a search but simply failed to obtain a warrant. If such evidence were admitted notwithstanding the unexcused failure to obtain a warrant, simply because there was probable cause, then there would never be any reason for officers to seek a warrant. See United States v. Mejia, 69 F.3d 309, 320 (9th Cir. 1995). As stated in Allen, the "inevitable discovery doctrine cannot rescue evidence obtained via an unlawful search simply because probable cause existed to obtain a warrant when the government presents no evidence that the police would have obtained a warrant. Any other rule would emasculate the Fourth

_____

**6** Because Allen was decided after the district judge denied the motion to suppress, he did not have the benefit of the Allen opinion to determine exactly what findings needed to be made to apply the inevitable discovery doctrine to this case.

13

Amendment." Allen, 159 F.3d at 842. What makes a discovery inevitable is not probable cause alone; it is probable cause plus a chain of events that would have led to a warrant or another justification independent of the search. United States v. Brown , 64 F.3d 1083, 1085 (7th Cir. 1995).

The Court recognizes that at some point the police officers were going to determine what was in the safe, especially since there was an odor of marijuana and drugs had already been found on Chanthavong, in his car, and in other parts of his room and closet. However, this supports the conclusion that the police officers had probable cause to obtain a warrant to search the safe. That is just not sufficient under Allen. The district court must make a finding about whether an exception to the warrant requirement applies and whether the police officer would have obtained a warrant. Neither of those conclusions were made in this case. The district court did not decide whether the consent to search specifically applied to the locked safe or whether the police officers would have obtained a warrant. Thus, under Allen, the district court must make those findings before applying the inevitable discovery doctrine to admit the evidence illegally obtained from the locked safe.

IV.

In sum, the district court properly found that the police officers had probable cause to stop and arrest Chanthavong based on the informant's tips. However, the district court may not use the inevitable discovery doctrine to admit the contents of the safe without making the requisite findings under Allen. To that extent, we vacate the district court's denial of the motion to suppress and remand the case for findings consistent with this opinion. In all other respects, the Court upholds the district court's denial of the motion to suppress.

VACATED AND REMANDED

14