**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                          No. 95-5780

THOMASINA JUDGE,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
Frank W. Bullock, Jr., Chief District Judge.
(CR-95-107-6-1)

Submitted: September 10, 1996

Decided: September 23, 1996

Before HALL and MOTZ, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William E. Martin, Federal Public Defender, Eric D. Placke, Assistant
Federal Public Defender, Greensboro, North Carolina, for Appellant.
Walter C. Holton, Jr., United States Attorney, Timika Shafeek, Assis-
tant United States Attorney, Greensboro, North Carolina, for Appel-
lee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Thomasina Judge pleaded guilty to possession with intent to distribute crack cocaine, 21 U.S.C.A. § 841(a)(1) (1988). Judge now challenges her conviction, arguing that the district court should have granted her motion to suppress both the crack and the incriminating statements she made to police following her arrest. Judge also contests her 120-month sentence, claiming that she should have received a reduction in her offense level because she played a mitigating role in the offense, USSG § 3B1.2.* Finally, Judge contends that under USSG § 5C1.2 she should have received a sentence within her guideline range, rather than the statutory minimum. Finding no merit to any of these contentions, we affirm.

I

Officers in Winston-Salem, North Carolina, were conducting bus interdiction at the Greyhound bus station on April 22, 1995. At the hearing on Judge's suppression motion, Detective Kent Sherrill testified that he noticed two men who had been waiting outside the station enter the station and greet Judge when she got off a bus from New York. Sherrill followed the three as they left the station, then called out to them. He identified himself as a police officer and asked if he could speak with them. Judge stopped; her companions continued walking.

Sherrill showed Judge his badge and explained that the police were conducting bus interdiction, checking for illegal drugs and weapons coming into Winston-Salem. He asked if he could talk to Judge, and she agreed. Sherrill then asked her a standard set of questions. In

_____

*United States Sentencing Commission, Guidelines Manual (Nov. 1994).

2

response, Judge told him that she was travelling alone from New York and that she had only a purse and a small carry-on bag.

Sergeant Marble joined Sherrill and Judge. Sherrill asked if he could search for contraband. Judge replied, "Go ahead," and handed him the carry-on bag. The officers found no contraband in the bag. Sherrill then asked whether Judge had any contraband on her person. Judge replied that she did not. Detective Sherrill testified that he, like all the officers involved in the incident, was wearing casual clothing, was not carrying or did not display a weapon, and spoke to Judge in a conversational tone.

Detective Sharon Mitchell approached the group and asked Judge if she could speak to her. The two women stepped aside. Sherrill never told Judge that she could not leave, and he never insisted that she speak to him. Mitchell testified that she asked Judge for consent to search her person. Judge consented. Mitchell, Judge, and another female officer went to the ladies' room. Mitchell testified that she noticed a bulge around Judge's stomach area. Mitchell asked Judge to unzip her pants. Judge replied, "I'll get it," and retrieved a brown paper bag. Inside the bag were plastic bags containing what appeared to be crack. The other officer found a small amount of marijuana inside Judge's clothing. Judge was arrested.

Officers transported her to the police station, where she signed a waiver-of-rights form and a consent-to-search form. Mitchell then interviewed Judge. Judge said that someone in New York had given her the crack and told her to deliver it to John Williams in Winston-Salem. Judge stated that she had hidden the drugs in her underwear. Mitchell testified that Judge never requested an attorney, and that Judge acknowledged verbally and in writing that she understood what rights--including the right to an attorney--she had waived.

Judge, who was twenty-nine, also testified at the suppression hearing. She denied giving consent, claimed that she requested an attorney, and told officers that she was confused. The district court denied the motion to suppress. The court found that Judge had voluntarily consented to having Mitchell search her person. Further, the court found that Judge's statements to Mitchell were voluntary. The court noted that Judge appeared to be intelligent, alert, and mature, and that

3

there was no credible evidence to indicate that her will had been overborne or that she was intimidated or confused.

Courts look to the totality of the circumstances to determine whether consent to a warrantless search was voluntary. United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996). Courts "consider the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter)." Id. A finding that an accused's consent was voluntary is reviewed for clear error. Id.

The district court's finding was not clearly erroneous. Judge was twenty-nine years old and appeared to the court to be intelligent. The officers who initially approached her were dressed in plain clothes and displayed no weapons. She was not told that she was not free to leave. Officers questioned her politely and asked for her consent to search her bag. Detective Mitchell, who also was dressed casually and displayed no weapon, inquired in a normal tone of voice whether she could search Judge's person. Testimony at the hearing, in short, fully supports the district court's finding that Judge gave her consent voluntarily, free of threats, force, or intimidation.

Similarly, the record fully supports the finding that Judge's statements to police were voluntarily made after a knowing waiver of her rights. Mitchell testified that she advised Judge of her Miranda rights, see Miranda v. Arizona, 384 U.S. 436 (1966), and Judge signed a form waiving those rights and stating that she understood the meaning of the waiver. Although the district court made no explicit finding on this point, we note that Mitchell testified that Judge did not request an attorney. Additionally, Judge responded on the signed waiver form that she did not want to have a lawyer and, specifically, did not wish to have a lawyer present during questioning. The district court's conclusion that there was a voluntary waiver of rights contains an implicit finding that Judge did not request an attorney. On these facts, we conclude that there was no violation of Miranda or Edwards v. Arizona, 451 U.S. 477 (1981).

4

II

Judge contends that she was entitled to a reduction in her offense level because she played a mitigating role in the offense. USSG § 3B1.2. Judge gave authorities conflicting stories about her involvement in the offense. She told the probation officer that she was approached while at the bus station by a man whom she did not know, who then gave her the bag and asked her to deliver it to someone in Winston-Salem. Judge claimed not to know what the bag contained until she boarded the bus. In contrast, Judge told the police that someone named "Kuba" beeped her and arranged to meet her in New York. Kuba gave her the drugs and instructed her to deliver them to John Williams in Winston-Salem. Judge then bought her bus ticket to Winston-Salem.

A drug courier is not entitled to an automatic reduction under § 3B1.2 without a showing that she has less culpability than other members of the organization. United States v. Gordon, 895 F.2d 932, 935 (4th Cir.), cert. denied, 498 U.S. 846 (1990). The burden rests with the defendant to show by a preponderance of the evidence that she is entitled to the adjustment. Id.

Judge gave different stories about her involvement in the crime. Under these circumstances, it was impossible for the district court to tell exactly what her role was. Judge therefore did not meet her burden of establishing entitlement to the adjustment.

III

Finally, Judge asserts that she was entitled to be sentenced within her guideline range, rather than to the statutory minimum of ten years. See 21 U.S.C.A. § 841(b) (West Supp. 1996); USSG § 5G1.1. Under the "safety valve" provision of 18 U.S.C.A.§ 3553(f) (West Supp. 1996) and USSG § 5C1.2, for certain offenses, a district court shall impose a sentence in accordance with the guidelines, without regard to the statutory minimum, if the court determines that the defendant meets five criteria.

One criterion is that the defendant, by the time of sentencing, truthfully provides the Government with all information about the instant

offense. 18 U.S.C.A. § 3553(f)(5); USSG § 5C1.2(5). The district court did not clearly err in finding that Judge had not met her burden of proving by a preponderance of the evidence that she truthfully provided the Government with all information and evidence she had regarding her crime. See United States v. Ivester, 75 F.3d 182, 185 (4th Cir. 1996). She told the police one story, and told the probation officer another. She also informed the probation officer, and the court at sentencing, that the story she gave to the police was false. Given the conflicting stories which Judge told, and her stating that she lied to the police, there was no clear error in denying her the protection of the safety valve.

IV

We accordingly affirm Judge's conviction and sentence. We dispense with oral argument because the materials before us reveal that argument would not significantly aid the decisional process.

AFFIRMED

6