**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Furman LATTIMORE, Jr.,
Defendant–Appellant.**

**No. 94–5915.**

United States Court of Appeals,
Fourth Circuit.

Submitted Jan. 9, 1996.

Decided June 25, 1996.

Jack H. Lynn, Greenville, South Carolina, for Appellant. J. Preston Strom, Jr., United States Attorney, David Calhoun Stephens, Assistant United States Attorney, Greenville, South Carolina, for Appellee.

Before WILKINSON, Chief Judge, and RUSSELL, WIDENER, HALL, MURNAGHAN, ERVIN, WILKINS, NIEMEYER, HAMILTON, LUTTIG, WILLIAMS, MICHAEL, and MOTZ, Circuit Judges.

Affirmed by published opinion. Judge WILKINS wrote the majority opinion, in which Chief Judge WILKINSON and Judges RUSSELL, WIDENER, NIEMEYER, LUTTIG, and WILLIAMS joined. Judge HALL wrote a dissenting opinion, in which Judges MURNAGHAN, ERVIN, HAMILTON, MICHAEL, and MOTZ joined.

## OPINION

WILKINS, Circuit Judge:

Furman Lattimore, Jr. appeals a decision of the district court denying his motion to suppress evidence seized during a consent search of his automobile. Because we cannot conclude that the district court clearly erred in finding that Lattimore's consent to search was freely and voluntarily given, we affirm.

## I.

The facts are not seriously disputed. On October 23, 1993, Lattimore was stopped by Trooper Raymond Frock of the South Carolina Department of Public Safety for exceeding the speed limit. Trooper Frock invited Lattimore to accompany him to his patrol vehicle while he prepared a ticket for failure to wear a seat belt and a warning ticket for the speeding violation. Lattimore obliged. After issuing the citations and returning Lattimore's driver's license, and as Lattimore prepared to exit the patrol vehicle, Trooper Frock asked him whether there were any narcotics or contraband in his automobile. Lattimore responded in the negative. Trooper Frock then requested and received Lattimore's oral consent to search the vehicle.*

Prior to conducting the search, while Trooper Frock prepared a written consent form, he and Lattimore engaged in a casual discussion about high school football. When Trooper Frock had completed the form, he offered it to Lattimore for his signature, explaining:

> Trooper: Okay, you gave me a verbal consent, ... this is written consent, okay. Let me explain this paragraph right here. Says I have [in] no way forced you, threatened you, ... or compelled you 'til [sic] I may search your vehicle. You understand that?
>
> Lattimore: Mm-hmm.
>
> Trooper: I need your signature or an X on the bottom. Again, it's just giving me consent.

Lattimore: On that, what's the difference on that?

Trooper: What [do] you mean?

Lattimore: If I say yes or I say no, it's still . . . .

Trooper: Well, let me explain something to you. I'm on a special team. I travel around the state. This is all I do. I search—

Lattimore: Uh-huh. I was watching that on . . .

Trooper: —97 percent of the cars I stop. It don't matter if you're 18 to 80 years old, you're black, white, red, Indian, Hispanic. I don't care what you are. That's all I do. You say you saw it on the news?

[The two discuss a television program showing highway patrol officers.]

Lattimore: Yeah, and I seen where [sic] they pulled a guy over, and they, you know, asked him the same thing you're asking me—whether they could search his car or not. And, um, what's the difference? If you do or you don't, it's gonna happen anyway, right?

Trooper: Not really. If you don't, I feel you're hiding something. Therefore, I'll call a drug dog right up the road to come down here and let him search your car.

Lattimore: That's what I'm saying. It don't really make no difference.

Trooper: Well,—

Lattimore: That's what I'm saying.

Trooper: —there's certain reasons why we do that.

Tape of Encounter Between Trooper Frock and Furman Lattimore, Jr. (Oct. 23, 1993).

---

* Although Trooper Frock's vehicle was equipped with a video camera that provided an audio record of the encounter between Lattimore and the officer, the pertinent portion of the conversation between the two men occurred while they were seated in the patrol vehicle. Since the video camera pointed forward from the dashboard of the automobile, it did not capture a video image of the relevant segment of the encounter.

The quality of the resulting recording at times is poor, so we accept the concession by the Government that Lattimore's oral consent to the search is not audible. Lattimore, however, does not dispute that he did consent orally without further discussion when Trooper Frock asked to search the vehicle. Moreover, the officer testified at the suppression hearing that Lattimore answered affirmatively when the request to search was made. And, it is obvious from Trooper Frock's next statement to Lattimore—"Hold on a [second], there's something I've got to do first."—that Lattimore had granted oral consent for the search. The district court recognized as much, finding that although Lattimore's answer was inaudible, it could be inferred that his answer was affirmative from the officer's next response. Further, the audio recording indicates that Trooper Frock referred to Lattimore's oral consent later in the conversation. In sum, there is simply no question that Lattimore orally gave consent for the search.

Following this colloquy, Lattimore signed the consent form. During the search of the vehicle, Trooper Frock discovered a bag containing approximately 95 grams of cocaine base, razor blades, a scale, and plastic bags.

Lattimore subsequently moved to suppress the evidence seized during the search, alleging that he had not voluntarily consented. After hearing testimony from Trooper Frock, receiving the written consent form signed by Lattimore, and viewing the videotape of the encounter, the district court denied the motion to suppress. Although the court noted some concern about Trooper Frock's statement regarding the "drug dog," it ruled that the consent was voluntary, emphasizing:

> [T]here was nothing else following that [statement] which indicated that the defendant did not fully understand his right to refuse and in fact went forward and executed the consent form which was subsequent to his verbal consent. And, therefore, the court finds that not only did the defendant understand what his rights were, he voluntarily and understandingly waived his rights ... and that this was a consent search.

J.A. 38. Lattimore subsequently pled guilty to possession with the intent to distribute cocaine base, *see* 21 U.S.C.A. § 841(a)(1) (West 1981), reserving the right to challenge the denial of the motion to suppress.

Lattimore offers two arguments in support of his contention that the district court erred in denying the motion to suppress. He first claims that his consent to the search was not voluntarily given. Alternatively, Lattimore maintains that Trooper Frock exceeded the permissible scope of the traffic stop and that this illegal detention vitiated his consent to the search. We address them in turn.

## II.

■ The Fourth Amendment prohibits unreasonable searches, and searches conducted without a warrant are per se unreasonable unless a valid exception to the warrant requirement is applicable. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Voluntary consent to a search is such an exception. *Id.* Lattimore's primary argument is that the

search of his automobile was unreasonable and therefore violative of the Fourth Amendment because his consent to the search was involuntary, that Trooper Frock's threat to utilize a "drug dog" in the event that he refused written permission for the search rendered his consent invalid.

■ In determining whether consent to search was freely and voluntarily given, the totality of the circumstances surrounding the consent must be examined. *See id.* at 227, 93 S.Ct. at 2047–48 ("[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."). In viewing the totality of the circumstances, it is appropriate to consider the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter). *See United States v. Watson,* 423 U.S. 411, 424, 96 S.Ct. 820, 828, 46 L.Ed.2d 598 (1976); *United States v. Analla,* 975 F.2d 119, 125 (4th Cir.1992), *cert. denied,* 507 U.S. 1033, 113 S.Ct. 1853, 123 L.Ed.2d 476 (1993); *United States v. Morrow,* 731 F.2d 233, 236 (4th Cir.), *cert. denied,* 467 U.S. 1230, 104 S.Ct. 2689, 81 L.Ed.2d 883 (1984). Whether the accused knew that he possessed a right to refuse consent also is relevant in determining the voluntariness of consent, although the Government need not demonstrate that the defendant knew of his right to refuse consent to prove that the consent was voluntary. *Schneckloth,* 412 U.S. at 248–49, 93 S.Ct. at 2058–59; *United States v. Gordon,* 895 F.2d 932, 938 (4th Cir.), *cert. denied,* 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990).

■ The voluntariness of consent to search is a factual question, and as a reviewing court, we must affirm the determination of the district court unless its finding is clearly erroneous. *See United States v. Wilson,* 895 F.2d 168, 172 (4th Cir.1990) (per curiam); *Gordon,* 895 F.2d at 938. And, we have recognized that when the lower court

" 'bases a finding of consent on the oral testimony at a suppression hearing, the clearly erroneous standard is particularly strong since the [court] had the opportunity to observe the demeanor of the witnesses.' " *Wilson,* 895 F.2d at 172 (quoting *United States v. Sutton,* 850 F.2d 1083, 1086 (5th Cir.1988)). Thus, even when an appellate court is convinced that it would have reached an opposite conclusion had it been charged with making the factual determination in the first instance, and although the temptation to substitute its judgment is particularly seductive when the encounter was recorded, a reviewing court may not reverse the decision of the district court that consent was given voluntarily unless it can be said that the view of the evidence taken by the district court is implausible in light of the entire record. *See Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

■ Based on our review of the totality of the surrounding circumstances, we cannot say that the factual finding of the district court that Lattimore's oral consent to the search was voluntary was clearly erroneous. On the date of the search, Lattimore was 29 years old, had a high school education, and held employment with the United States Postal Service. "There is no indication in this record that [Lattimore] was a newcomer to the law...." *Watson,* 423 U.S. at 424–25, 96 S.Ct. at 828. Furthermore, nothing in the videotaped record of the traffic stop indicates an environment that was coercive or intimidating; to the contrary, Lattimore appeared to be quite relaxed throughout. The incident occurred on a well-travelled highway, during the middle of the afternoon, and was not of inordinate duration. Trooper Frock was the sole officer present when Lattimore granted his consent to search, and at no time did the officer use force or a threat of force to coerce Lattimore's consent. In fact, the two men engaged in friendly conversation throughout the encounter. Although nothing affirmatively demonstrates that Lattimore understood his right to refuse to consent to the search, this factor is not "a necessary prerequisite to demonstrating a 'voluntary' consent." *Schneckloth,* 412 U.S. at 232–33, 93 S.Ct. at 2050. Based on this record, the conclusion that Lattimore's oral consent was given voluntarily is amply supported; indeed, we may safely say that no other opinion is supportable.

■ Having determined that Lattimore voluntarily gave his oral consent to the search, the question becomes whether he subsequently withdrew it. "A consent to search is not irrevocable, and thus if a person effectively revokes ... consent prior to the time the search is completed, then the police may not thereafter search in reliance upon the earlier consent." 3 Wayne R. LaFave, *Search and Seizure* § 8.2(f), at 674 (3d ed.1996) (footnote omitted); *see United States v. McFarley,* 991 F.2d 1188, 1191 (4th Cir.) (noting that "once consent is withdrawn or its limits exceeded, the conduct of the officials must be measured against the Fourth Amendment principles"), *cert. denied,* 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 342 (1993). It is clear, however, that a refusal to execute a written consent form subsequent to a voluntary oral consent does not act as an effective withdrawal of the prior oral consent. *See United States v. Thompson,* 876 F.2d 1381, 1384 (8th Cir.) (holding consent voluntary although defendant refused to sign written consent form), *cert. denied,* 493 U.S. 868, 110 S.Ct. 192, 107 L.Ed.2d 147 (1989); *United States v. Castillo,* 866 F.2d 1071, 1081–82 (9th Cir.1988) (holding refusal to execute written consent form did not vitiate prior oral consent); *United States v. Boukater,* 409 F.2d 537, 539 (5th Cir.1969) (same).

■ With these principles in mind, we do not hesitate to conclude that the search was proper because Lattimore never withdrew his oral consent to the search of his automobile. Indeed, it is undisputed that at no time did Lattimore expressly withdraw his consent for the search. As such, if Lattimore had refused to sign the written consent form, Trooper Frock would have been justified in searching the vehicle under the authority of the oral consent, "because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno,* 500 U.S. 248, 250–51, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991).

And, if Lattimore's refusal to sign the written consent form would not be adequate to affect a withdrawal of his consent, certainly his question concerning the form coupled with his subsequent signature of it cannot have been. Thus, we conclude that because Lattimore did not withdraw his previous, voluntarily given, oral consent, Trooper Frock's search pursuant to it was lawful.

The dissent suggests that we should ignore Lattimore's unquestionably voluntary oral consent and focus instead on the circumstances surrounding his execution of the written consent. But, in our view, this reasoning is misdirected because the basic premise that the oral consent may be disregarded is unsupported. The dissent's assertion that we may properly dismiss Lattimore's oral consent because the district court did not rely on it and the Government does not suggest that we should, simply misconstrues their position. It is true that the Government and the district court focused their attention on the conversation between Trooper Frock and Lattimore after the officer presented and explained the written consent form—not surprising since it was upon this basis that Lattimore principally argued that his consent was involuntary. Both the district court and the Government properly recognized that this factor was the only one in the totality of circumstances that arguably weighed in favor of a finding that the consent was not voluntary, and both opined that the exchange was not sufficient to render Lattimore's consent involuntary. Nothing about this supports a conclusion that we may disregard Lattimore's voluntary oral consent to the search. Moreover, we would not be free to disregard the undisputed facts simply because the district court or the Government had not relied upon them even if that were the case.

In view of the Government's concession that Trooper Frock did not possess the reasonable suspicion necessary to detain Lattimore to permit the drug dog to sniff his automobile, if Lattimore had not already given a voluntary oral consent to the search, Trooper Frock's assertion that he would "call a drug dog" to search the automobile if Lattimore refused written consent would raise serious questions concerning the voluntariness of his consent. *See Bumper v. North Carolina,* 391 U.S. 543, 549–50, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968) (holding that a warrantless search of a home could not be justified as a consent search when officers notified the occupant that they possessed a search warrant); *Amos v. United States,* 255 U.S. 313, 315, 317, 41 S.Ct. 266, 267, 268, 65 L.Ed. 654 (1921) (holding that wife's consent to search was not voluntary when agents told her that they had come to search the premises); *Orhorhaghe v. I.N.S.,* 38 F.3d 488, 500 (9th Cir.1994) ("It is well established that there can be no effective consent to a search or seizure if that consent follows a law enforcement officer's assertion of an independent right to engage in such conduct."); *United States v. Garcia,* 890 F.2d 355, 361 (11th Cir.1989) (holding that consent was voluntary when agents never represented that they possessed a search warrant or that they could lawfully search without defendant's consent). But, it would be wholly inappropriate for us to ignore the undisputed—and in light of his failure to withdraw consent, dispositive—fact that Lattimore gave a valid and voluntary oral consent to search.

## III.

Lattimore also asserts that by questioning him concerning the presence of narcotics in the automobile without possessing a reasonable suspicion that he was engaged in criminal activity, Trooper Frock exceeded the lawful scope of the traffic stop and thereby converted the encounter into an illegal detention that tainted the subsequent search. *See Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1878–79, 20 L.Ed.2d 889 (1968) (holding that the inquiry into the validity of an investigative detention "is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place"); *United States v. Rusher,* 966 F.2d 868, 875 (4th Cir.), *cert. denied,* 506 U.S. 926, 113 S.Ct. 351, 121 L.Ed.2d 266 (1992) (noting that traffic stop may be analyzed as a *Terry* stop). We disagree.

■ Trooper Frock did not question Lattimore concerning the presence of narcotics or contraband in his automobile, or request permission to search it, until after the officer had issued the citations and returned Lattimore's driver's license, indicating that all business with Lattimore was completed and that he was free to leave. During the subsequent conversation between Trooper Frock and Lattimore, "a reasonable person would have felt free to decline the officer['s] requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991). The totality of the circumstances presented indicate that from this point forward the encounter was consensual; Lattimore was not being detained. Thus, there was no illegality to taint Lattimore's oral consent to the search.

Because we conclude that Lattimore's arguments are without merit, we affirm.

*AFFIRMED.*

HALL, Circuit Judge, dissenting:

Lattimore's comments following his oral consent—"If I say yes, if I say no, it's still ..."; "[I]t's going to happen anyway, right?"; "[I]t don't really make no difference"—admit of only one interpretation: "You're going to search my car, one way or the other, aren't you?" Frock's threat to "call a drug dog up" translates into an unmistakable "yes." There simply was *no* choice from that point forward.[1] Accordingly, I would hold that Lattimore's *written* consent was involuntary because it evinced nothing more than "acquiescence to a claim of lawful

authority." *Bumper*, 391 U.S. at 549, 88 S.Ct. at 1792 (holding that "consent," given after a policeman falsely asserted that he had a warrant, could not later be used to justify the search); *see also United States v. White*, 979 F.2d 539, 542 (7th Cir.1992) (noting that "[b]aseless threats to obtain a search warrant may render consent involuntary"). I would also apply the same reasoning to the issue of the continuing validity of the oral consent.

In its discussion of whether Lattimore withdrew his consent, the majority notes that, while consent to search may be withdrawn,[2] "a refusal to execute a written consent form subsequent to a voluntary oral consent does not act as an effective withdrawal of the prior oral consent." Majority op. at 651. The majority then concludes that the search was lawful because Lattimore never withdrew "his previous, voluntarily given, oral consent...." Majority op. at 652.[3] Wholly missing from this analysis is any discussion of the drug dog threat.

The district court's finding that Lattimore understood "what his rights were" is clearly erroneous. He had been told that attempting to withdraw consent or refusing to sign the form were no longer viable options. Although a voluntariness finding does not hinge on a showing that Lattimore knew that he could withdraw his consent (*Gordon*, 895 F.2d at 938), there is a critical difference between not knowing you have a right and being *told* that you do not have it. If Lattimore, as soon as he muttered "yes" to the initial request to search, had been informed that such consent was irrevocable and that

---

**1.** Trooper Frock's statement that he searches 97% of the cars he stops strongly suggests to me that he rarely takes no for an answer.

**2.** In some limited circumstances, consent may *not* be withdrawn once given. *See, e.g., United States v. DeAngelo*, 584 F.2d 46 (4th Cir.1978) (holding that persons voluntarily entering an airport screening process "acquiesce[ ] in its full potential scope," including physical inspection), *cert. denied*, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 493 (1979). We are not confronted with such a situation here.

**3.** The majority later acknowledges that the drug dog comment "would raise serious questions concerning the voluntariness of [Lattimore's written] consent." Majority op. at 651–652.

However, in view of its reliance on the oral consent as the basis for the search, the majority never reaches the issue of the voluntariness of the written consent. This does not prevent the majority from using Lattimore's execution of the consent form as support for the holding that Lattimore never withdrew his oral consent: "[I]f Lattimore's refusal to sign the written consent form would not be adequate to affect a withdrawal of his consent, certainly his question concerning the form coupled with his subsequent signature of it cannot have been." Majority op. at 651. If the written consent was involuntary, as I would find it to be (and as the majority implies it to be), then certainly such consent cannot be used to bolster a finding that the oral consent was never withdrawn.

the search was going forward regardless of anything else Lattimore said or did, I believe there would be no question but that the search would be held unlawful. I am unable to see how Lattimore's case differs from the hypothetical in any material respect.

I would reverse the district court's order denying the motion to suppress.

MURNAGHAN, ERVIN, HAMILTON, MICHAEL and MOTZ, JJ., join in this dissent.

