**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 97-5002

LATRESE SHIRELLE TAYLOR,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Samuel G. Wilson, Chief District Judge.
(CR-97-42)

Submitted: December 22, 1998

Decided: January 26, 1999

Before NIEMEYER and WILLIAMS, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Charles Y. Sipe, WEST & ARCHAMBAULT, P.L.L.C., Charlottes-
ville, Virginia, for Appellant. Robert B. Crouch, Jr., United States
Attorney, Ray B. Fitzgerald, Jr., Assistant United States Attorney,
Charlottesville, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Latrese S. Taylor appeals from her convictions and sentence for conspiring to possess with the intent to distribute cocaine base, in violation of 21 U.S.C. § 846 (1994), and possessing with the intent to distribute cocaine base, in violation of 21 U.S.C.§ 841(a)(1) (1994). Finding no error, we affirm.

While conducting drug interdictions at the Greyhound bus station in Charlottesville, Virginia, law enforcement officers Harry Shafer and Tony Barksdale observed Taylor as she disembarked a bus originating from New York, New York. Taylor was accompanied by Macee Passee.

After following Taylor through the bus terminal and up a flight of stairs leading to the restrooms, Officer Shafer approached Taylor in the hallway as she was exiting the women's restroom. After advising Taylor that he was a law enforcement officer, Detective Shafer asked for and received permission from Taylor to search her carry-on bag and her person.

As Shafer was conducting a pat-down search of Taylor's person, he felt a bulge around the sock line of Taylor's right leg. At that point in time, Taylor stated, "Don't get personal. If you want to search me, you will have to get a female officer." Officer Shafer stopped the search and radioed for a female police officer to come assist him. Officer Barksdale, who was standing nearby, advised Taylor that if she had drugs she might as well give them up and asked if she minded lifting her pants leg. She revealed the item from her pants leg, which ultimately proved to be approximately 38.3 grams of cocaine base. Taylor was arrested.

Prior to her trial, Taylor moved to suppress the cocaine base alleging that her arrest was the result of a warrantless search and seizure

in violation of the Fourth Amendment. During argument on Taylor's motion, the Government conceded that there was no probable cause to detain and search Taylor but claimed that she consented to the search. The district court denied Taylor's motion to suppress the evidence after finding that Taylor voluntarily consented to the search. Taylor subsequently pleaded guilty to the charges and testified at Passee's trial on the Government's behalf. In her plea agreement, Taylor reserved for appeal her right to challenge the validity of the search.

Prior to her sentencing, Taylor filed a Motion to Compel Specific Performance requesting the district court to order the Government to perform the agreement entered into with her and, if deemed necessary, to conduct an evidentiary hearing. Taylor contended that after she pleaded guilty, the Government approached her and requested her assistance in the form of meeting with investigators and providing testimony at Passee's trial. She further alleged that prior to her testimony at Passee's trial, "[she] was assured that[she] could receive a benefit for her assistance at her sentencing provided her assistance and testimony was truthful and beneficial" to the Government. She alleged that after she testified at Passee's trial, the Government promised that it would recommend a departure from the guideline range in return for her testimony at Passee's trial. The district court denied Taylor's motion, and she was sentenced to eighty-seven months imprisonment.

On appeal, Taylor claims that the district court erroneously found that the search of her person was consensual and, therefore, valid. The Fourth Amendment prohibits unreasonable searches, and searches conducted without a warrant are per se unreasonable unless a valid exception to the warrant requirement is applicable. See United States v. Elie, 111 F.3d 1135, 1144 (4th Cir. 1997). Voluntary consent to a search is such an exception. See id. In determining whether a defendant's consent to a search was voluntarily given, the totality of the circumstances surrounding the consent must be examined. See id. In evaluating the totality of the circumstances, a court must consider the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to the search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter). See id. Whether a defendant has voluntarily consented to

3

a search is a factual determination, and we must affirm the determination of the district court unless its finding is clearly erroneous. See id.

The district court found that Taylor voluntarily gave her consent to the search. The district court reasoned that "Taylor was controlling the conditions of the search." The district court further found that her actions following Officer Barksdale's admonition that if she had drugs she might as well turn them in did not indicate that her consent had been withdrawn. We find that the district court's findings were not clearly erroneous and were supported by the evidence in the record.

Officer Shafer approached Taylor separately while Officer Barksdale was standing approximately ten feet away. Although the officers were in civilian clothes, Officer Shafer immediately revealed their identity as police officers and specified their purpose for approaching Taylor. He asked for and received permission to search her carry-on bag and her person. When Officer Shafer reached and squeezed around her ankles, he felt a bulge at her left ankle approximately six inches long and about an inch and a half in diameter. Based on his training and experience, he concluded that the bulge was cocaine base. That Taylor requested a female officer to continue the search and subsequently extended her left foot out, pulled her pants legs up, and revealed the drugs after Officer Barksdale encouraged her to give up the drugs, shows that Taylor was in control of the conditions of her search. The encounter lasted approximately three minutes, and Taylor never indicated that she wanted Officer Shafer to stop, that she wished to leave, or that she did not want to speak with the officers. Nothing in the record indicates that Taylor withdrew her consent. Taylor argues that her consent was not voluntary because the officers failed to inform her of her right to refuse consent. We disagree. It is well established that the Government need not demonstrate that the defendant knew of her right to refuse consent to prove that the consent was voluntary. United States v. Lattimore , 87 F.3d 647, 650 (4th Cir. 1996) (en banc).

Taylor next claims that the district court erred in denying her an evidentiary hearing on her Motion to Compel Specific Performance. Specifically, Taylor contends that although the Government promised to make a recommendation for a departure, it did not do so, and she

4

is entitled to an evidentiary hearing to determine whether such a promise was made and, if so, whether the Government must be compelled to perform as promised. Taylor alleges that prior to her testimony at Passee's trial, she was told that she could receive a lower sentence provided that her testimony was beneficial to the Government. Taylor further alleges that the day after she provided testimony at Passee's trial, the Government informed her that her testimony was both truthful and beneficial to the Government and promised her that it would make a recommendation to the sentencing court to depart from her guideline range.

We find that the district court did not abuse its discretion in denying an evidentiary hearing because Taylor did not carry her burden of making a substantial threshold showing that she was entitled to a substantial assistance motion. See Wade v. United States, 504 U.S. 181, 186 (1992); see also United States v. Conner, 930 F.2d 1073, 1076 (4th Cir. 1991) (the party alleging a breach had the burden of proving, by a preponderance of the evidence, that the government breached the agreement). The district court had no evidence that the Government had promised to move for a downward departure. The plea agreement between Taylor and the Government contained no language about a recommendation for a downward departure in return for substantial assistance. The plea agreement, however, contained a clause stating that Taylor "understand[s] that the United States will object to any departure from the sentencing guidelines." (J.A. at 125.) The agreement further stated that Taylor "ha[s] not been coerced, threatened, or promised anything other than the terms of this plea agreement . . . in exchange for [her] plea of guilty." (J.A. at 125.) Thus, the Government's failure to move or recommend a sentence reduction for Taylor "was not a breach of the plea agreement because it contained no such agreement." United States v. Schuman, 127 F.3d 815, 818 (9th Cir. 1997) (holding that the government did not breach a plea agreement where the agreement "specifically provide[d] that it embodie[d] the entire agreement between the parties, written and oral, and that any modification must be in writing").

At Taylor's plea hearing, the district court satisfied all the requirements of Fed. R. Crim. P. 11, and found that Taylor's plea was voluntarily and intelligently entered. The court determined what the terms of the agreement were and that Taylor understood those terms. Fur-

5

thermore, she acknowledged at the plea hearing that there were no other agreements or understandings aside from those contained in the plea agreement. She further testified at Passee's trial, allegedly after the Government assured her that she could receive a benefit at her sentencing if her testimony was truthful and beneficial to the Government, that no one had promised her anything or threatened her or tried to persuade her in any way about testifying. Moreover, on cross-examination she testified that it was not her understanding that she could potentially receive a lower sentence in return for her testimony. She expressly testified that she did not have an "understanding" with the Government that she would get a reduced sentence for her testimony or a motion for a downward departure based on her substantial assistance. Therefore, Taylor's claim that she was entitled to an evidentiary hearing to determine whether the Government promised to make a substantial assistance motion fails.

Accordingly, we affirm Taylor's convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6