**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 98-4204

MARK ANTHONY JACOBS,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
William L. Osteen, Sr., District Judge.
(CR-97-136)

Submitted: February 9, 1999

Decided: February 22, 1999

Before HAMILTON and WILLIAMS, Circuit Judges, and HALL,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Walter T. Johnson, Jr., Jackie Stanley, LAW OFFICES OF WALTER
T. JOHNSON, JR., Greensboro, North Carolina, for Appellant. Wal-
ter C. Holton, Jr., United States Attorney, Robert M. Hamilton, Assis-
tant United States Attorney, Greensboro, North Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Mark Jacobs appeals his conviction of possession with intent to distribute crack cocaine and the resulting sentence pursuant to his guilty plea. The only issue before us is the propriety of the district court's denial of Jacobs' motion to suppress evidence of the cocaine found in his car. We affirm.

Jacobs was one of two drivers stopped by Officer Lisenby, a North Carolina police officer. Both drivers were exceeding the speed limit on the interstate. The other driver, a Caucasian male, was asked to leave his car and sit in the police officer's vehicle while a warning ticket was issued. After the ticket was issued, the driver was permitted to leave the scene. The police officer then approached Jacobs, who is African-American. Jacobs supplied the officer with his license and registration. Jacobs was then asked to sit in the officer's vehicle while a warning ticket was issued. While in the police cruiser, the officer engaged Jacobs in a conversation in which Jacobs stated that he was going to visit his aunt in the hospital. Jacobs stated that his aunt was in "Hicksville," but he did not know the name of the hospital or his aunt's address. He also appeared nervous and stated first he was traveling from Petersburg or Pittsburgh, and then New York. Jacobs was issued a warning ticket and his documents were returned to him. As Jacobs began to exit the police vehicle, the officer asked him if he had any drugs, alcohol, or firearms in his car. Jacobs said that he did not. The officer asked if he could do a "quick search" of Jacobs' car. Jacobs replied, "Yes, you can search," but Jacobs refused to sign a written consent form.

By this time, Officer Steele had arrived as back-up and had parked behind Lisenby's vehicle. Lisenby had Jacobs wait with Steele during the search of Jacobs' car. Lisenby used a trained narcotics dog to carry out the search. Approximately fifteen minutes after the search

2

began, Jacobs expressed concern to Steele about his not being able to see the search and asked if he could leave Steele's police cruiser to view the search more closely. Jacobs was told to remain in the cruiser for safety reasons. An initial search of the vehicle did not uncover anything illegal. However, Lisenby testified that his police dog showed an interest in the back right portion of the car. Approximately one hour after the search began, Officer Lisenby used a screwdriver to remove the jack plate that held the tire jack and tools for the vehicle and found a package of white powder in a plastic bag secured with duct tape. The powder was field tested and determined to be cocaine.

Jacobs was later indicted for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (1994). Jacobs sought suppression of the drugs recovered during the traffic stop, challenging his consent to the extent of the search and also contending that the stop was pretextual. During the motion hearing, the government played a videotape of the search and an audiotape of Jacobs' conversations with Officer Lisenby. The district court denied Jacobs' motion to suppress. Jacobs later pled guilty in accordance with a plea agreement but reserved the right to appeal the adverse ruling on his motion to suppress. Jacobs was sentenced to 163 months' imprisonment.

We review the district court's legal conclusions in regard to a motion to suppress de novo and the factual determinations on suppression issues under a clearly erroneous standard. See United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992). Jacobs argues that the search of his car violated his constitutional rights in several respects.

Jacobs first argues that his stop was pretextual and that race was a motivating factor. Jacobs acknowledges that when an officer has probable cause to believe that a defendant has violated a traffic law, the officer's stop of the car is reasonable under the Fourth Amendment. See United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993). Furthermore, Jacobs does not contest the allegation that he was speeding. However, Jacobs argues that the stop was pretextual based upon Lisenby's questioning him about illegal substances immediately following issuance of the warning ticket. Jacobs asserts that because the driver of the first car, a Caucasian male, was allowed to leave the scene quickly without further questioning, the questioning of Jacobs

3

is evidence of a pretextual stop based on the assumption that an African American male driving a moderately expensive car with New York license plates is probably transporting drugs. The district court properly concluded that the stop was neither pretextual nor unreasonable under the Fourth Amendment.

After the initial stop, the validity of which is not contested, Lisenby did not question Jacobs about drugs until after he issued a citation and returned Jacobs' driver's license, indicating that Jacobs was free to go. See United States v. Lattimore, 87 F.3d 647, 653 (4th Cir. 1996) (en banc). Jacobs does not contend that police used the stop to coerce him into giving consent to the search, and Jacobs presents no other basis upon which to find that the stop was pretextual. Furthermore, mere questioning by the police, even on a subject unrelated to the purpose of the stop, is not itself a Fourth Amendment violation. See United States v. Shabazz, 993 F.2d 431, 436 (5th Cir. 1993) (citing Florida v. Bostick, 501 U.S. 429, 433 (1991)).

Jacobs also contends that the police exceeded the scope of his consent in the search of his car. The nature of consent is a factual question to be determined in light of the totality of the circumstances, and the district court's findings must therefore be affirmed unless clearly erroneous. See United States v. Wilson, 895 F.2d 168, 171-72 (4th Cir. 1990). When Officer Lisenby requested permission to conduct the search, he asked if he could do a "quick search." Jacobs argues that the one hour search that followed exceeded the scope of his consent. Furthermore, Jacobs contends that his refusal to sign a written consent form, which contained consent for a detailed search, limited his consent to a "quick search." Written consent to search, however, is not the exclusive means of determining whether consent is valid, and a defendant's subsequent refusal to execute a written consent form does not taint any prior oral consent that he may have given. See Lattimore, 87 F.3d at 651.

Jacobs has presented no evidence that he specifically limited the scope of the search. Furthermore, Jacobs' rejection of the written consent form cannot be used as a yardstick to measure the scope of his oral consent because Jacobs testified that he never even saw the form or discussed its contents with police. Because Jacobs did not know the contents of the form, he cannot successfully argue that his oral con-

4

sent must have been to something less than what a signed form would have permitted. Although Jacobs testified that he believed his consent was only for Officer Lisenby to "take a look at the vehicle," there is no evidence that Jacobs communicated his belief to police or otherwise set limits on the scope of the search. Based on the totality of the circumstances, the district court properly found that Lisenby's search did not exceed the scope of Jacobs' consent.

Jacobs also claims that he withdrew his consent when he asked to leave Officer Steele's police vehicle. "`A consent to search is not irrevocable, and thus if a person effectively revokes . . . consent prior to the time the search is completed, then the police may not thereafter search in reliance upon the earlier consent.'" Id. (quoting 3 Wayne R. LaFave, Search and Seizure § 8.2(f), at 674 (3d ed. 1996) (alteration in original); see United States v. McFarley, 991 F.2d 1188, 1191 (4th Cir. 1993) (noting that "once consent is withdrawn or its limits exceeded, the conduct of the officials must be measured against the Fourth Amendment principles"). Although Jacobs expressed annoyance as to being unable to view the search and as to the amount of time it was taking, he did not ask the officers to stop their search. The district court properly found, after considering the totality of the circumstances, that Jacobs' expression of annoyance at the length of the search was not a withdrawal of consent. Indeed, it is undisputed that at no time did Jacobs expressly withdraw his consent for the search. Because Jacobs did not withdraw his previous, voluntary, oral consent, we conclude that the entire search pursuant to that consent was lawful.

For these reasons we affirm Jacobs' conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5