UNITED STATES of America,

v.

. Edilberto ANGELES–GUZMAN.

No. 5:09–CR–264–BO–2.

United States District Court,
E.D. North Carolina,
Western Division.

Jan. 23, 2010.

Jorgelina E. Araneda, Araneda Law Firm, PC, Raleigh, NC, for Edilberto Angeles–Guzman.

Rudy E. Renfer, U.S. Attorney's Office, Raleigh, NC, for United States of America.

## ORDER

TERRENCE W. BOYLE, District Judge.

This matter is before the Court on Defendant's Motion to Suppress. Defendant Edilberto Angeles–Guzman moves to suppress evidence obtained during the search of his home and his statements made to officers. For the reasons stated herein, Defendant's Motion is GRANTED in part and DENIED in part.

### INTRODUCTION

On August 23, 2008, a confidential informant ("CI") ordered half a kilogram of cocaine from a co-defendant, Jobani Gonzalez–Trejo, who directed the CI to pick up the cocaine from the Defendant, Edilberto Angeles–Guzman. The CI and law enforcement officers then drove to Angeles–Guzman's home to pick up the cocaine. Angeles–Guzman exited his home carrying a bag containing half a kilogram of cocaine and approached the vehicle where the CI and law enforcement officers were waiting. The officers then placed Angeles–Guzman under arrest and escorted him into his mobile home.

When the officers entered Angeles–Guzman's home, they encountered Janet Galicia, Angeles–Guzman's girlfriend, and in-

formed her that Angeles–Guzman had been arrested on cocaine charges and that the officers were waiting inside the home while a search warrant was obtained. Because Angeles–Guzman spoke only Spanish and the officers spoke only English, the officers used Galicia as a translator. Through Galicia, the officers requested and obtained Angeles–Guzman's consent to search the home. Having obtained what they believed to be valid consent to search the home, the officers conducted a search and discovered a .22 caliber rifle in the living room and an additional ounce of cocaine and digital scales in the bedroom. Again using Galicia as a translator, the officers then advised Angeles–Guzman of his *Miranda* rights and he waived those rights and made statements to the officers.

Angeles–Guzman was indicted for controlled substances offenses including conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, possession with intent to distribute five hundred grams or more of cocaine, and distribution of cocaine. Angeles–Guzman filed this Motion to suppress on October 29, 2009, arguing that the items seized from his home and his statements to officers were unconstitutionally obtained. The Government responded on November 16, 2009. A hearing was held in Raleigh, North Carolina, on December 9, 2009. Angeles–Guzman filed a Response in Support and the Government filed a Response in Opposition on December 28, 2009. The Motion is now ripe for ruling.

*DISCUSSION*

## I. Seizure of Property from Defendant's Home

■■■ Angeles–Guzman's Motion to Suppress is DENIED with respect to the items seized from his home. Warrantless entry into a residence is presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). But "where police officers (1) have probable cause to believe that evidence of illegal activities is present and (2) reasonably believe that evidence may be destroyed or removed before they could obtain a warrant, exigent circumstances justify a warrantless entry." *United States v. Cephas*, 254 F.3d 488, 494–95 (4th Cir.2001). In the instant case, the officers had probable cause to believe that evidence of illegal activities would be present in the mobile home because the officers observed Angeles–Guzman exiting the home to deliver half a kilogram of cocaine to the CI. And because the officers had information that others lived in the home and observed others in the home, the officers reasonably believed that evidence might be destroyed or removed.

■■■ Having lawfully entered the Angeles–Guzman's home, a search could be conducted based on either voluntary consent or pursuant to a search warrant. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In determining whether consent to search is freely and voluntarily given, the Court must consider the totality of the circumstances surrounding the consent. *Id.* at 227, 93 S.Ct. 2041; *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir.1996). The government need not demonstrate that the defendant knew of his right to refuse consent to prove that the consent was voluntary. *Id.* Here, officers used Janet Galicia to translate their request to search the home and Angeles–Guzman's response. As discussed more fully below, Galicia did not speak Spanish with sufficient skill to adequately translate the officers' request to search the home. Therefore, the Government has not shown that Angeles–Guzman's consent to search the home was freely and voluntarily given. Consequently, the officers searched Angeles–Guzman's home without either voluntary consent or a search warrant.

■ But the fruits of an unconstitutional search should nevertheless be admitted if they inevitably would have been discovered by lawful means. *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *United States v. George*, 971 F.2d 1113, 1121 (4th Cir. 1992); *United States v. Thomas*, 955 F.2d 207, 210–11 (4th Cir.1992). Here, the officers lawfully entered the Angeles–Guzman's home and had probable cause to conduct a search of the home. At the time of entry, the officers initially secured the home pursuant to a valid exigency in anticipation of obtaining a search warrant. The officers then searched the residence with the good faith belief that Angeles–Guzman had consented to the search. If the officers had not obtained Angeles–Guzman's ostensible consent through Galicia, the officers would have maintained the status quo in the home until a search warrant was obtained.

And the rationale for the exclusionary rule, the deterrence of police misconduct, would not be served by suppressing the items seized from Angeles–Guzman's home. *See Thomas*, 955 F.2d at 209. Police misconduct cannot be said to have occurred where law enforcement officers have probable cause to search a residence and reasonably and in good faith rely on consent obtained through a translator who is later revealed to be deficient. Here, the officers relied reasonably and in good faith on the translation provided by Galicia. All of Angeles–Guzman's responses, translated by Galicia, were contextually appropriate responses to the officers' questions and the officers had no reason to believe that Angeles–Guzman did not understand the nature of his answers or actions. Therefore, because the officers inevitably would have discovered the items seized from Angeles–Guzman's home and suppressing those items would not serve to deter police misconduct, Angeles–Guzman's Motion to Suppress is DENIED with respect to the items seized from his home.

## II. Defendant's Statements to Officers

■ Angeles–Guzman's Motion to Suppress is GRANTED with respect to his statements to officers. A valid waiver of *Miranda* rights must be made voluntary and with a full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it. *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). When a defendant is advised of his *Miranda* rights in his native tongue and claims to understand such rights, a valid waiver may be effectuated. *United States v. Hernandez*, 913 F.2d 1506, 1510 (10th Cir.1990). "The translation of a suspect's Miranda rights need not be a perfect one, so long as the defendant understands that he does not need to speak to police and that any statement he makes may be used against him." *Id.*

■ The Government has not shown that the *Miranda* warnings given to Angeles–Guzman were sufficient to allow him to make a voluntary and knowing waiver of his rights. The use of a translator who is uncertified or unaffiliated with law enforcement does not by itself render a *Miranda* warning ineffective. *See Hernandez*, 913 F.2d at 1510. But here, Galicia's Spanish language ability was insufficient to provide even the imperfect translation required by *Hernandez*. Galicia only completed one semester of formal Spanish education during high school and learned the measure of Spanish that she knows while visiting Mexico with her ex-husband. She made six such visits to Mexico, the longest of which lasted for one month. Galicia's testimony at the suppression hearing indicates that her Spanish language vocabulary was inadequate to translate the *Miranda* warnings

properly. She testified that she did not know if her Spanish language vocabulary was proper because of the ad hoc manner in which she acquired it. She does not read a Spanish language newspaper. She does not own a Spanish language dictionary. And she does not understand everything said on Spanish language television or radio programs. Moreover, when asked by the Court to translate the word "incriminate", she was unable to do so. Therefore, in light of Galicia's limited knowledge of the Spanish language, the Government has not shown that Angeles–Guzman's waiver of his *Miranda* rights was made with a sufficient awareness of the nature of the rights being abandoned and the consequences of abandonment. As such, Angeles–Guzman's Motion to Suppress is GRANTED with respect to his statements.

### CONCLUSION

Defendant's Motion to Suppress is DENIED with respect to the items seized from Defendant's home. Defendant's Motion to Suppress is GRANTED with respect to Defendant's statements to officers.