*Daniel McDonnell v. State of Maryland*, No. 1246, Sept. Term 2021. Opinion by Shaw, J.

**SEARCHES AND SEIZURES: THE FOURTH AMENDMENT**

Law enforcement officers generally must obtain a judicial warrant prior to the search and subsequent examination of property. In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement. A defendant's voluntary consent to search is an exception to the Fourth Amendment's warrant requirement. A search and subsequent examination of property based on consent is constitutionally permissible if the search and examination falls within the scope of consent. Once the consent to search is revoked, absent any other warrant exceptions, any further examination of property is unreasonable and unconstitutional. U.S. Const. amend. IV.

**SEARCHES AND SEIZURES: THE FOURTH AMENDMENT**

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures…." Individuals maintain a legitimate expectation of privacy in such property. An expectation of privacy can be lawfully lost in a variety of circumstances. Once the expectation of privacy is lawfully lost, it ceases to exist, unless the expectation is reclaimed by some form of subsequent action and arises again. U.S. Const. amend. IV.

**WARRANT REQUIREMENT: THE FOURTH AMENDMENT**

Consent is an exception to the warrant requirement if it is knowingly and voluntarily given. An individual may place limitations on the scope of consent or revoke consent at any time. When consent serves as the sole basis for authority to search and seize property, law enforcement officers are required to adhere to the express limitations and revocation by the individual. U.S. Const. amend. IV.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1246

September Term, 2021

DANIEL ASHLEY MCDONNELL

v.

STATE OF MARYLAND

Wells, C.J.
Shaw,
Kenney, James A., III
  (Senior Judge, Specially Assigned),

JJ.

Opinion by Shaw, J.

Filed: December 1, 2022

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

*Ripken, J., did not participate in the Court's
decision to designate this opinion for publication
pursuant to Md. Rule 8-605.1.

This appeal stems from the denial of a motion to suppress by the Circuit Court for Anne Arundel County. Appellant, Daniel McDonnell, was indicted on charges of promotion or distribution of child pornography and possession of child pornography. Investigators from the United States Army Criminal Investigation Division Command ("USACIDC") searched his laptop's hard drive, with consent, created a "mirror-image copy" of the hard drive and found "evidence of child pornography search terms in [Appellant's] internet browser history[.]" Seven days later, Appellant retained counsel and withdrew his consent. The examination of the copy occurred after his withdrawal.

Appellant filed a motion to suppress, which was denied following a hearing. On September 24, 2021, he entered a plea of not guilty, and was tried on an agreed statement of facts. Appellant was found guilty on three counts of distribution of child pornography and sentenced to a suspended aggregate sentence of thirty years' incarceration, with five years' supervised probation. He timely appealed and presents the following question for our review:

1. Did the search of the information from Appellant's laptop computer, without a judicial warrant, violate Appellant's Fourth Amendment rights, where the consent to examine the contents had been formally withdrawn prior to the search pursuant to the terms of the initial consent obtained?

For reasons discussed below, we reverse.

**BACKGROUND**

On July 12, 2019, investigators from the United States Army Criminal Investigation Division Command approached Appellant, without a search warrant, at his residence, and

conducted what they characterized as a "knock and talk." During that interaction, investigators asked Appellant about an upload of suspected child pornography. Appellant agreed to sign a consent to search form, in which he "consent[ed] to the seizure and subsequent search of" the contents of his electronic devices. The form states in pertinent part:

> I hereby authorize the undersigned Special Agent, another Special Agent or other person designated by USACIDC, to conduct at any time a complete search of all digital media including cellphones, thumb drives, hard disk drives, laptops and any other media relevant to this investigation.
>
>    *   *   *
>
> I relinquish any constitutional right to privacy in these electronic devices and any and all information stored on them. I authorize USACIDC to make and keep a copy of any information stored on these devices. I understand that any copy made by USACIDC will become the property of USACIDC and that I will have no privacy or possessory interest in the copy.
>
>    *   *   *
>
> I understand that I may withdraw my consent at any time.

That same day, investigators seized multiple electronic devices from Appellant's residence including, "a hard drive from a laptop computer." Between July 12, 2019, and July 16, 2019, investigators created a "mirror-image copy" of Appellant's hard drive. On July 19, 2019, Appellant's counsel sent an email to investigators informing them that he represented Appellant and "any purported consent to the seizure of [Appellant's] laptop, or examination of its contents, is hereby withdrawn." Counsel requested the return of Appellant's laptop.

Sometime between August 5-20, 2019, investigators performed a forensic examination on the "mirror-image copy" of Appellant's hard drive. A report was generated on September 3, 2019, that stated there was "evidence of child pornography search terms in [Appellant's] internet browser history, however there was no evidence of actual child pornography on the system." Appellant was subsequently charged with twenty counts of promotion or distribution of child pornography and twenty counts of possession of child pornography in the Circuit Court for Anne Arundel County.

Appellant filed a motion to suppress the evidence, requesting, in part, "[s]uppression of any in-court identifications and/or illegally seized evidence and/or any statements or confessions, and/or evidence derived from therefrom[.]" At a motions hearing held on August 16, 2021, the parties stipulated to the relevant facts above and to the admission of four documents: (1) a consent to search form; (2) an email dated July 19, 2019 sent by Appellant's counsel to CIDC investigators; (3) a memorandum detailing the findings of the forensic examination of the Appellant's laptop hard drive; and (4) an additional page of the investigation report regarding the time frame in which the hard drives were copied. The court issued an order on August 30, 2021, denying Appellant's motion.

On September 24, 2021, Appellant entered a not guilty plea and the case proceeded on an agreed statement of facts. Appellant was found guilty on three counts of distribution of child pornography and was sentenced to an aggregate sentence of thirty years' incarceration, fully suspended, with five years' supervised probation. He timely appealed.

**STANDARD OF REVIEW**

In reviewing a circuit court's denial of a motion to suppress evidence, this Court "must rely solely upon the record developed at the suppression hearing." *Grimm v. State*, 232 Md. App. 382, 396 (2017) (quoting *Briscoe v. State*, 422 Md. 384, 396 (2011)). "We view the evidence" presented, and any "inferences that may be drawn . . . in the light most favorable to the party who prevails on the motion." *Id.* This Court accepts "the circuit court's findings of fact unless they are clearly erroneous, but . . . we undertake an independent constitutional evaluation by reviewing the relevant law and applying it to the unique facts and circumstances of this case." *Trott v. State*, 473 Md. 245, 254 (2021) (citation and internal quotations omitted).

**DISCUSSION**

Appellant argues the court erred in denying his motion to suppress. He asserts the forensic examination of his laptop's hard drive and the data within, conducted after he withdrew his consent, was an illegal warrantless search and violated his Fourth Amendment rights. Appellant argues that *Riley v. California*, 573 U.S. 373, 485 (2014), supports his contention that a warrant was required.

The State counters that Appellant lacked any legitimate expectation of privacy in the mirror-image copy of his laptop's hard drive, which was created with his consent and where he expressly disclaimed any possessory or privacy interest in the devices. The State asserts the examination of the mirror copy was not a Fourth Amendment search. The State argues that *Riley* does not create Fourth Amendment protection for copies of digital data and that Appellant does not have privacy interests in the copy.

4

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "The exclusion of evidence obtained in violation of these provisions is an essential part of the Fourth Amendment protections." *Swift v. State*, 393 Md. 139, 149 (2006); *Mapp v. Ohio*, 367 U.S. 643, 655-56 (1961). "[T]he ultimate measure of the constitutionality of a governmental search is 'reasonableness.'" *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995). "[R]easonableness generally requires the obtaining of a judicial warrant." *Id*. at 653.

"A search conducted pursuant to valid consent, *i.e*[.]*,* voluntary and with actual or apparent authority to do so, is a recognized exception to the warrant requirement." *Id*.; *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). "Once voluntary consent is given, it remains valid until it is withdrawn *by the defendant*." *United States v. Ortiz*, 669 F.3d 439, 447 (4th Cir. 2012) (emphasis in original) (holding that state troopers were permitted to search petitioner's vehicle because he gave troopers consent to search twice, and never withdrew his consent, and the search was conducted within the scope of the consent). "A consent to search is not irrevocable, and thus if a person effectively revokes . . . consent prior to the time the search is completed, then the police may not thereafter search in reliance upon the earlier consent." *United States v. Lattimore*, 87 F.3d 647, 651 (4th Cir. 1996) (holding that officers were permitted to search the petitioner's automobile because he never expressly withdrew his consent for the search).

"The person invoking Fourth Amendment protections bears the burden of demonstrating his or her legitimate expectation of privacy in the place searched or items

5

seized." *Williamson v. State*, 413 Md. 521, 534 (2010) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). If governmental action infringes no legitimate expectation of privacy, then no "search" has occurred for Fourth Amendment purposes. *See Raynor v. State*, 440 Md. 71, 82-84 (2014).

In *Riley v. California*, the Supreme Court consolidated and examined two cases, *Riley* and *United States v. Wurie*, to determine the limited question of whether the warrant requirement under "the search incident to arrest doctrine applie[d] to modern cell phones." *See Riley*, 573 U.S. at 385 (2014). In that case, petitioner, Riley, was stopped for a traffic violation and searched incident to the arrest. *Id*. at 378. An officer seized a cellphone from his pants pocket and accessed information on the phone. *Id.* The officer noticed the repeated use of a term associated with a street gang. *Id*. Later, a detective, specializing in gangs, examined the phone's digital contents and based on his findings, the State charged Riley in connection with a shooting that had occurred a few weeks earlier. *Id*. at 379. Riley moved to suppress all evidence. *Id*. The lower court denied his motion and he was subsequently convicted. *Id.* at 379-80.

In *Wurie*, the respondent, Wurie, was arrested after police observed him participating in an apparent drug sale. *Id*. at 380. At the police station, the officers seized a cell phone from Wurie's person and noticed the phone was receiving multiple calls from a source identified as "[his] house" on its external screen. *Id*. Officers opened the phone, accessed its call log, and traced the number to what they suspected was Wurie's apartment. *Id*. They secured a search warrant and found drugs, a firearm and ammunition, and cash in the ensuing search. *Id*. at 381. Wurie was charged with drug and firearm offenses. *Id*.

He moved to suppress the evidence obtained from the search of the apartment. *Id*. The district court denied Wurie's motion, but the First Circuit reversed holding that "the amount of personal data cell phones contain" make them "distinct from other physical possessions that may be searched . . . without a warrant . . . ." *Id.*

In answering the question of what police must do before searching a cell phone seized incident to an arrest, the Supreme Court held, "get a warrant." *Id.* at 403. Observing that cell phones have become a 'pervasive and insistent part of daily life,' the Court noted that cell phones "differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person. The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." *Id.* at 393. The Court then held:

> Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans "the privacies of life," *Boyd, supra*, at 630, 6 S.Ct. 524. The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought.

*Riley*, 573 U.S. at 403 (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)).

In *Varriale v. State*, 444 Md. 400, 433 (2015), the petitioner, suspected of rape, signed a consent to search form and agreed to the search of his person in the form of saliva and penile swabs. *Id.* at 405. The form stated, "any evidence found to be involved in this investigation, being conducted by the Anne Arundel County Police Department can be

7

used in any future criminal prosecution." *Id.* Subsequent DNA analysis determined that Varriale was not involved in the rape, however, his DNA was uploaded into a suspect databank and an "automatic search resulted in a match between Varriale's DNA profile and a DNA profile associated with an unsolved commercial burglary that occurred in 2008." *Id.* at 406. Varriale was later charged with burglary and filed a motion to suppress the State's DNA evidence, "on the grounds that the subsequent use of his DNA . . . exceeded the scope of his consent." *Id.*

The Circuit Court for Anne Arundel County denied the motion, and Varriale appealed to this court. We affirmed the circuit court's judgment holding that "the State had validly obtained the sample, … it had no obligation to obtain a warrant before using the sample in a subsequent investigation." *Id.* at 409. Varriale filed a petition for certiorari. The Court of Appeals granted Varriale's petition and held "that the Fourth Amendment did not prohibit the police from using Varriale's lawfully obtained DNA sample, where he consented to the search without placing an express limitation on his consent. . . ." *Id.* at 410. The Court reasoned that "Varriale's failure to place an express limitation on the use or storage of his DNA sample . . . constituted a waiver of any privacy interest in that DNA sample and the State was not prohibited from utilizing his DNA profile in subsequent criminal investigations." *Id.* at 419. The Court did observe that, "[o]nce a search goes outside the scope of consent . . . it becomes unreasonable." *Id.* at 433.

In *Wallace v. State*, the Court of Appeals addressed what is required to reclaim one's expectation of privacy in an item. 373 Md. 69 (2003). Petitioner Wallace was convicted by a jury of first-degree and second-degree murder, first degree assault, and the unlawful

8

taking of a motor vehicle. *Id.* at 72. While in custody, his clothing and other personal belongings were taken from him, inventoried, and then stored in the facility's property room. *Id.* at 75. Wallace's items were then moved to the patrol side property room for safekeeping after an officer investigating a murder received witness accounts providing a description of a man's appearance that was similar to petitioner. *Id.* at 76. "Once on the patrol side, [the investigating officer] separated the clothing from the plastic bag and, while folding the clothing, noticed stains on petitioner's shorts." *Id.* However, "[n]o analysis was done on the stains at that time. . . ." *Id.* at 77. The State's Attorney's Office advised the investigating officer "to take the items back over to the booking area and to obtain a search warrant to obtain those items." *Id.* The investigating officer returned the items and applied for a search warrant, relying in part, on his "observations upon moving the clothing to the patrol side property room." *Id.* The warrant was issued and executed that same day "and the items were released from the booking area for analysis the next day." *Id.* Wallace was subsequently charged and filed a motion to suppress, which was denied by the court. *Id.* at 71. He was ultimately convicted, and his conviction was affirmed by this Court. *Id.* at 72. The Court of Appeals granted his petition for certiorari. *Id.* at 73.

In affirming this Court's holding, the Court of Appeals held that "once petitioner's belongings were taken and put into police custody, he had no reasonable expectation that they would be kept private from police inspection." *Id.* at 93. The State lawfully possessed the property based on a routine inventory search stemming from a lawful arrest. *Id.* at 81. "[Wallace] was well aware that the police had dominion over the clothing and could exclude him from possessing it." *Id.* at 93. The Court noted that after the initial inventory,

9

"[Wallace] could have requested the release and exchange of his clothing to a third person, but he did not." The Court concluded that "[o]nce the expectation of privacy is lawfully lost, it does not exist, unless such an expectation arises again by some subsequent action." *Id.* at 95. Wallace declined to take any subsequent action.

Here, it is uncontested that Appellant voluntarily gave his written consent to investigators, allowing them to seize and search his laptop's hard drive. At the time of his consent, Appellant was informed "that an inquiry [was] being conducted in connection with . . . possession [and] distribution of child pornography." His consent authorized investigators to create a mirror-image copy of the hard drive. He agreed to "relinquish any constitutional right to privacy [he had] in the electronic devices and any information stored on them." He also agreed that because the "copy made by USACIDC w[ould] become the property of USACIDC . . . [he] w[ould] have no privacy or possessory interest in the copy."

However, seven days later, prior to the forensic examination of the copy, Appellant expressly withdrew his consent, stating, "any purported consent to the seizure of [Appellant's] laptop, or examination of its contents, is hereby withdrawn." Unlike *Varriale*, Appellant expressly limited or eliminated the examination of the data. As we see it, his withdrawal was clear and unequivocal. Also, unlike *Wallace*, by his subsequent action, he reclaimed a reasonable expectation of privacy in the data.

In a recent Court of Appeals opinion, *Richardson v. State*, No. 46, 2022 WL 3711713, at *1 (Md. Aug. 29, 2022), law enforcement officers sought and obtained a search warrant for the retrieval of information stored in a cellphone. The Court held the officers acted reasonably in executing the search even though the warrant lacked the necessary

10

particularity. The Court noted the importance and sensitivity of digital information as discussed in *Riley*. The Court also noted that "[v]igilance in enforcing the probable cause and particularity requirements is . . . essential to the protection of the vital privacy interests inherent in virtually every modern cell phone and to the achievement of the 'meaningful constraints' contemplated in *Riley*." *Id.* at \*21 (quoting *Burns v. United States*, 235 A.3d 758, 773-74 (D.C. 2020); *Riley*, 573 U.S. at 399). Courts are "obligated – as 'subtler and more far-reaching means of invading privacy have become available to the Government' – to ensure that the 'progress of science' does not erode Fourth Amendment protections." *Carpenter v. United States*, 138 S. Ct. 2206, 2223 (2018) (quoting *Olmstead v. United States*, 277 U.S. 438, 473-74 (1928) (Brandeis, J., dissenting)).

Here, because individuals have a legitimate expectation of privacy in the digital data within their computer, we hold that Appellant's revocation of his consent to examine data from his laptop computer precluded a forensic examination of the mirror-image copy of its hard drive without a warrant. For that reason, his motion to suppress should not have been denied.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED; COSTS TO BE PAID BY APPELLEE.**

11

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/1246s21cn.pdf